COURT OF APPEALS DIV I
2013 OCT 21  AM 9: 26


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68771-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY SAUNDERS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 21, 2013 |

SPEARMAN, A.C.J. — The purpose of the "essential elements" rule in the context of a to-convict instruction is to ensure that the jury is not left guessing at the meaning of an element of the crime and that the State is not relieved of its burden of proving each element of the crime. By contrast, the goal of the "essential elements" rule in the context of a charging document is to give a defendant notice of the nature of the crime charged so the defendant can prepare a defense. In applying the rule we are guided by the purpose to be served. As such, we reject Jeffrey Saunders' argument that his conviction for second degree kidnapping must be reversed under State v. Johnson, 172 Wn. App. 112, 297 P.3d 710 (2013), where we held that the definition of "restrain" was an "essential element" of unlawful imprisonment that must be included in the charging document. Holding that Johnson does not control in this challenge to the to-convict

instruction, that the jury was not left guessing at the meaning of an element of the crime, and that the State was not relieved of its burden of proof, we affirm.

## FACTS

On September 10, 2010, in Mount Vernon, Washington, Salvador Valdez, his son J.V., his niece, and his sister were waiting in a Kentucky Fried Chicken drive-through in Valdez's red, Ford Explorer. They were approached by Jeffrey Saunders, who unbeknownst to Valdez, was a "bounty hunter," who along with Robin Davis and his son, Chet Davis,[1] had been hired to repossess the Explorer. Saunders yelled at Valdez and directed him to pull forward. As Valdez proceeded through the drive-through lane, he saw Saunders and the Davises standing near a large truck. They told him to get out of the Explorer. But instead, Valdez drove off quickly, going over the curb as he left.

Valdez drove to his sister's home in Mount Vernon where he dropped off his sister and niece. On his way to Stanwood, he stopped at a Burger King. As he was entering the parking lot he saw the same large truck driving behind him. Saunders and Davis got out of the truck and ran toward the Explorer. Davis and Saunders ordered Valdez and J.V. out of the car at gunpoint. Saunders denied brandishing a pistol that was later found in the truck, but all parties agreed Davis was brandishing a rifle. Valdez and J.V. complied. Saunders and Davis explained to two women who witnessed the incident that they were bounty hunters. The women called 911.

---

[1] For ease of reference, Chet Davis will be referred to by his first name. No disrespect is intended.

Saunders ordered Valdez to put his hands on the car and patted Valdez down. He then took Valdez's wallet and gave it to Davis, telling him to "hold this in case he runs." Saunders told Valdez that he was going to jail. Saunders got into the driver's seat of the Explorer and ordered Valdez, who thought he was being carjacked, into the passenger seat. J.V. was ordered at gunpoint to get into Saunders' truck. Saunders and Davis refused Valdez's request that he and J.V. ride together. Davis then drove J.V. in the truck, following the Explorer driven by Saunders.

While riding in the Explorer, Valdez told Saunders he was diabetic and that he feared he was going into diabetic shock. Saunders drove to a gas station and allowed Valdez to get a drink. In response to the 911 call, the police arrived at the gas station and investigated the incident, which resulted in Saunders and Davis each being charged with two counts of kidnapping and two counts of second degree assault, each count with a special allegation that the defendants were armed with a firearm at the time the crimes were committed.[2]

Saunders and Davis were tried together. At trial, Saunders testified that he owned Allstate Recovery, a vehicle repossession business. He testified that he and Davis were hired to repossess two of the Valdezes' cars, and that when he approached the Explorer at the Kentucky Fried Chicken, he saw the driver make a hand movement that was consistent with putting the car in gear. According to Saunders, he had to jump

---

[2] Saunders was also charged with and acquitted of one count of unlawful possession of a firearm.

back as the Explorer accelerated out of the drive-through. He testified he did not call the police because he believed the police were biased against repossession agents.

Davis testified that when they approached the Explorer at the Burger King parking lot, it accelerated, nearly running over his son Chet. According to Davis, it was at this point that he decided to arrest Valdez for attempted vehicular assault.

The jury convicted Saunders of two counts of second degree kidnapping while armed with a firearm, but acquitted him of the assault charges.[3] He appeals.

## DISCUSSION

Saunders argues the to-convict instruction relieved the State of its burden of proving all of the elements of kidnapping. We reject his argument and affirm.

A to-convict instruction "must contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence." State v. DeRyke, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003) (quoting State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). Here, the to-convict instruction read:

> To convict the defendant, Jeffrey Saunders, of the crime of kidnapping in the second degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 10th day of September, 2010, the defendant intentionally abducted Salvador Valdez; and

---

[3] Davis was convicted on all counts, with firearm enhancements on each count. He appeals separately, cause No. 68679-8-I.

(2) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers at 103. (The to-convict instruction for Count II, second degree kidnapping of J.V. was identical in all material respects; see also CP at 105).

Although this instruction mirrors the language in the statute defining kidnapping in the second degree, RCW 9A.40.030, Saunders nevertheless argues it omits an essential element of the crime. Saunders' argument can be summarized as follows: (1) the word "abduct" is defined in RCW 9A.40.010(1)[4] as "to restrain" a person by threatening to use deadly force; (2) "restrain" is further defined in RCW 9A.40.010(6)[5] as (a) restricting a person's movements; (b) without consent; (c) without legal authority; and (d) in a manner which interferes substantially with his or her liberty; (3) each portion of the definition of "restrain" requires the *mens rea* of knowledge;[6] and (4) because the definitions of "abduct" and "restrain" were not included in the to-convict instruction, but were instead set out in a separate instruction, the State was relieved of its burden of

---

[4] "'Abduct' means to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1).

[5] "'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.040.010(6).

[6] Although RCW 9A.40.030 establishes intent as the *mens rea* for kidnapping, Saunders argues that because RCW 9A.08.010(2) provides that if a person acts intentionally, the person also acts knowlingly, knowledge is also an element of kidnapping upon which the jury must be instructed. See Brief of Appellant at 21-22. He cites no authority for this proposition.

proving Saunders knew he did not have legal authority to restrict the victims' movements.

In his opening brief, Saunders relies primarily on State v. Warfield, 103 Wn. App. 152, 5 P.3d 1280 (2000). In that case, three bounty hunters restrained a person for the purpose of arresting him on a 1987 misdemeanor warrant out of Maricopa County, Arizona. Id. at 154. It was undisputed that the three did not know that the Arizona warrant "had no lawful effect in Washington." Id. at 155. Division Two of this court held that the word "knowingly" in the statute defining the crime of unlawful imprisonment[7] modified all portions of the definition of "restrain." Id. at 159. Because it was undisputed that the three bounty hunters did not have knowledge they were without legal authority to restrict the person's movement, the court held the evidence was insufficient and reversed the bounty hunters' convictions for unlawful imprisonment. Id.

Warfield is of no help to Saunders because the question of what must be included in a to-convict instruction for unlawful imprisonment was not at issue in that case. The court did not discuss the to-convict instructions or any instructions at all. Warfield simply held that a person charged with unlawful imprisonment must have knowledge the restraint was without authority of law, and if the evidence does not show the requisite knowledge, it is insufficient to sustain a conviction.

In his reply brief, Saunders cites a case recently decided by this court, State v. Johnson, 172 Wn. App. 112, 297 P.3d 710 (2012) as modified on denial of

---

[7] "A person is guilty of unlawful imprisonment if he or she knowingly restrains another person." RCW 9A.40.040(1).

reconsideration (Feb. 13, 2013)). In that case, Johnson was convicted of three counts of

second degree assault and one count of unlawful imprisonment for what his wife

testified amounted to years of domestic violence. Among other things, Johnson

challenged the sufficiency of the information charging him with unlawful imprisonment.

The information stated that the defendant "did knowingly restrain [J.J.], a human

being[.]" Id. at 137. The court held that the use of the word "restrain" was, by itself,

insufficient to provide Johnson with notice of the charge:

> Because the information refers only to "restrain," we look to its plain meaning in a dictionary. The American Heritage Dictionary states the following definitions: (1) "To hold back or keep in check; control"; (2) "To prevent (a person or group) from doing something or acting in a certain way"; and (3) "To hold, fasten, or secure so as to prevent or limit movement." Noticeably absent from these definitions is any mention of restricting "a person's movements without consent," "without legal authority," or by "interfer [ing] substantially with his or her liberty." While one could reasonably infer the first and last phrases, there is no way to reasonably conclude that the restraint must be "without legal authority." In short, the information is deficient because this essential element cannot be reasonably inferred from the information.

Id. at 138-39. The court also held that, based on Warfield, the statutory definition of

"restrain" was an "essential element" of the crime of unlawful imprisonment:

> In State v. Warfield, Division Two of this court held that "the statutory definition of unlawful imprisonment, to 'knowingly restrain,' causes the adverb 'knowingly' to modify all components of the statutory definition of 'restrain,' Including the 'without lawful authority' component." There, three bounty hunters knowingly restrained Mark DeBolt for the purpose of arresting him on a 1987 misdemeanor warrant out of Maricopa County, Arizona. The three did not know that the Arizona warrant "had no lawful effect in Washington."
>
> The court explained that "knowledge of the law is a statutory element of the crime of unlawful imprisonment, without proof of which, defendants' convictions cannot stand." Then, the court reversed the defendants' unlawful imprisonment convictions

> because "[i]t is uncontroverted that defendants believed they were acting lawfully because they had a warrant for DeBolt's arrest" and a Washington police officer "appeared to ratify the lawfulness of their actions."
>
> Warfield supports the conclusion that an essential element of unlawful imprisonment is that a person have knowledge that the restraint was "without legal authority."

Id. at 722-23 (footnote and citations omitted).[8]

Johnson does not control our decision in this case because, like Warfield, it does not address the question presented here: Whether the statutory definition of an element of a crime must necessarily be included in the to-convict instruction? Washington courts have long held that they do not. For example, in State v. Lorenz, 152 Wn.2d 22, 93 P.3d 133 (2004), the court addressed whether a definition of an element of first degree child molestation must be included in the to-convict instruction. A person is guilty of first degree child molestation "when the person has [ ] sexual contact with another who is less that twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." Id. at 31 (citing RCW 9A.44.083(1)). The court noted that in a separate "definitions" section, the legislature had defined "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party or a third party." Id. (quoting RCW 9A.44.010(2)).

The court rejected the defendant's argument that sexual gratification was an essential element that must be included in the to-convict instruction:

---

[8] We note there is a split of authority in this court regarding whether the portions of the definition of restrain are "essential elements" for the purpose of being included in an information charging unlawful imprisonment. A recently decided case held the opposite of Johnson on this issue: State v. Phuong, 174 Wn. App. 494, 299 P.3d 37 (2013).

RCW 9A.44.083 unambiguously states that a person is guilty of the crime of first degree of child molestation if: (1) the perpetrator has *sexual contact*, (2) with victim who is less than twelve years old, and (3) perpetrator is at least thirty six months older than the victim. The plain meaning rule applies. The legislature codified "sexual contact" as an essential element of first degree child molestation. The definition of "sexual contact" is in RCW 9A.44.010(2), a wholly separate section of chapter 9A.44 RCW, entitled "Definitions." Had the legislature intended a term to serve as an element of the crime, it would have placed "for the purposes of sexual gratification" in RCW 9A.44.083. Rather the definition of "sexual contact" clarifies the meaning such that it excludes inadvertent touching or contact from being a crime. State v. Gurrola, 69 Wn. App. 152, 157, 848 P.2d 199 (1993); Brown, 78 Wn. App. at 895. A plain reading of the statute favors a holding that "sexual gratification" is not an essential element to the crime of first degree child molestation but a definition clarifying the meaning of the essential element "sexual contact." On this basis, we hold that "sexual gratification" is not an essential element of first degree child molestation.

The State offers three additional reasons in support of the court holding that "sexual gratification" is not an essential element of first degree child molestation: First, the State asserts that courts have never required the words defining an element be included in the "to convict" instruction in place of the actual element itself. See State v. Laico, 97 Wn. App. 759, 764, 987 P.2d 638 (1999) (definition of "great bodily harm" does not add an element to the assault statute, rather it is intended to provide understanding); State v. Marko, 107 Wn. App. 215, 219-20, 27 P.3d 228 (2001) (definition of threat does not create additional elements rather it merely defines an element); State v. Strohm, 75 Wn. App. 301, 308-09, 879 P.2d 962 (1994) (definitional term does not add elements to the criminal statute).

Second, according to the State, such a holding would create poor policy because the inclusion of definitions would result in lengthy "to convict" instructions and potentially confuse the jury.

. . .

The State's argument is supported by authority. We hold that "sexual gratification" is not an essential element to the crime of first degree child molestation but a definitional term that clarifies the meaning of the essential element, "sexual contact."

Id. at 34-36; see also State v. Allen, 176 Wn.2d 611, 630, 294 P.3d 679 (2013)

(separate definitional instruction defining "true threat" in felony harassment case was

not error; definition of "true threat" need not be included in to-convict instruction).

The reasoning in <u>Lorenz</u> and <u>Allen</u> applies to this case. If the legislature had intended for the statutory definition of restraint to be an element of the crime to be included in a to-convict instruction, it could have included the definition, or any part thereof, in RCW 9A.40.030. It did not do so. We conclude that, similar to <u>Lorenz</u>, the definition of "restrain" is not an essential element for purposes of being included in a to-convict instruction, but is instead simply a definitional term that clarifies the meaning of "abduct," the essential element of the crime of kidnapping.

Saunders' reliance on <u>Johnson</u> also fails to recognize the different underlying purposes for including an essential element in a charging document and including such an element in a to-convict instruction. The rule that a charging document must include all essential elements of a crime is grounded in the constitutional requirement that defendants be informed of the nature and cause of the accusation against them. <u>State v. Taylor</u>, 140 Wn.2d 229, 236, 996 P.2d 571 (2000). Thus, "[t]he 'primary goal' of the 'essential elements rule' is to give a defendant notice of the nature of the crime charged so the defendant would be able to prepare to defend against the charge." <u>Id.</u> (quoting <u>State v. Kjorsvik</u>, 117 Wn.2d 93, 101, 812 P.2d 86 (1991)).

By contrast, notice to a defendant so he can prepare a defense is not a purpose of including essential elements in a to-convict instruction. Rather, "'a 'to convict' instruction must contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence.'" <u>DeRyke</u>, 149 Wn.2d at 910, (quoting <u>State v. Smith</u>, 131 Wn.2d 258, 263, 930 P.2d 917

(1997)). "It cannot be said that a defendant has had a fair trial if the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved." Smith, 131 Wn.2d at 263 (citing State v. Johnson, 100 Wn.2d 607, 623, 674 P.2d 145 (1983) overruled on other grounds, State v. Bergeron, 105 Wn.2d 1,4, 711 P.2d 1000 (1985)).

Thus, the fact that a portion of a definition must be included in an information does not mean it is essential to a to-convict instruction. For example, although "sexual gratification" is an element of the proof necessary for the State to obtain a child molestation conviction, it is not an essential element for purposes of a to-convict instruction:

> Lorenz held only that the purpose of sexual gratification was not an essential element of first degree child molestation that must be included in the to-convict instruction. This conclusion does not, however, relieve the State of its burden to show sexual gratification as part of its burden to prove sexual contact.

State v. Stevens, 158 Wn.2d 304, 309, 143 P.3d 817 (2006).

The proper question here is whether Saunders' right to due process was violated by a to-convict instruction that left the jury guessing at the meaning of an element of the crime or relieved the State of the burden of proving an element. It did not. "Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law[.]" State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). We review jury instructions "in the context of the instructions as a whole[.]" State v. Pirtle,

11

127 Wn.2d 628, 656, 904 P.2d 245 (1995). Here, the to-convict instruction mirrored the statute defining kidnapping in the second degree, and both "abduct" and "restrain" were defined in a separate instruction. Saunders has not shown a danger that the jury was guessing at the meaning of an element of the crime, or that the State was relieved of proving an element of the crime. Additionally, the trial court permitted Saunders to argue, and Saunders did so argue, to the jury that he believed he had the authority to restrain the Valdezes. In sum, Saunders' right to due process was not violated by the to-convict instruction.

Affirmed.

WE CONCUR:

_____

Spearman, A.C.J.

_____

Cox, J.

_____