IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30166-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NIKOLAS FRANCIS GLENN | ) | |
| CAMPBELL, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Nikolas Campbell and another man allegedly entered a woman's apartment, took some items, and left in her vehicle. The State charged Mr. Campbell with one count of first degree robbery with a deadly weapon enhancement, one count of theft of a motor vehicle, and one count of first degree burglary with a deadly weapon enhancement. Mr. Campbell was convicted by a jury, sentenced, and he then appealed.

Among other errors, he contends that (1) the charging information impermissibly varied from the jury instructions, (2) the State failed to prove the deadly weapon element of first degree robbery, first degree burglary, and the deadly weapon enhancements, and

No. 30166-4-III
*State v. Campbell*

(3) the trial court erred, for sentencing purposes, in not considering the first degree robbery and the first degree burglary as encompassing the same criminal conduct. We determine that the charging document, as a whole, provided fair notice to Mr. Campbell of the allegations he faced, and reject Mr. Campbell's first argument. We also determine that the undisputed evidence showed that either Mr. Campbell or his accomplice was armed with a firearm, which is a deadly weapon and, therefore, reject Mr. Campbell's second argument. We also determine that the burglary anti-merger statute, among other reasons, supports the trial court's decision of treating the offenses separate for sentencing purposes. We therefore affirm the convictions and the sentence and remand for correction of a scrivener's error.

### FACTS

On April 7, 2010, two men kicked open the door of Debra Vargas's apartment. Ms. Vargas was home at the time. Also in the apartment was Ms. Vargas's son, James Stethem, who was sleeping in a separate room. Mr. Stethem awoke to find one of the men carrying items out of the apartment. Mr. Stethem saw that both men were masked, and that one of the men was carrying a gun. The man with the gun told Mr. Stethem to turn away. The man without the gun took Mr. Stethem's portable DVD player and his

2

mom's laptop. The men drove away in Ms. Vargas's van. Ms. Vargas called 911. According to her, one man had a gun and the other had a pipe.

In the same apartment complex lived Ms. Vargas's niece, Christina Morales. The night before the robbery, Mr. Campbell, Michael Rice, and Cecelia Circo were visiting Jerami Wilson at Ms. Morales's apartment. Mr. Campbell told Mr. Wilson that he had a gun. Mr. Wilson saw a black handle in Mr. Campbell's waistline and saw something shaking in Mr. Campbell's pants that he suspected was a gun. Mr. Wilson saw a pipe in Mr. Rice's back pocket. Mr. Rice asked if Mr. Wilson was interested in helping "get back" at Ms. Morales's aunt. Report of Proceedings (RP) at 139-40. Mr. Wilson remembered a laptop being mentioned in the conversation and that it could be worth the same amount of money that Ms. Vargas owed Ms. Morales.

Eventually, Mr. Wilson went to bed. He did not see the group leave. He awoke to find law enforcement in Ms. Morales's apartment. The apartment was in disarray. Law enforcement asked Mr. Wilson if he knew the apartment was robbed. Missing from the apartment was Ms. Morales's collection of three Chucky[1] dolls as well as other items. During the police investigation of the incident, Mr. Wilson was shown a photograph of

---

[1] "Chucky" is a fictional character from the 1988 horror movie "Child's Play." http://www.imdb.com/title/tt0094862/.

3

the pipe found in Ms. Vargas's apartment and identified the pipe as the same pipe carried by Mr. Rice.

Law enforcement found a Chucky doll outside Ms. Vargas's apartment. Ms. Morales identified the doll as one from her collection. Law enforcement concluded that someone broke into Ms. Vargas's apartment, based on a footprint outside Ms. Vargas's door and damage to the door frame and door. Ms. Vargas's landlord saw Mr. Campbell and Mr. Rice going between the apartments of Ms. Vargas and Ms. Morales on the night of the incident.

Ms. Circo remembered that on the night of the incident, Mr. Campbell and Mr. Rice were in Ms. Morales's apartment. Mr. Campbell had a silver gun. She did not see Mr. Rice with a pipe. Ms. Circo fell asleep at the apartment. She awoke to find Mr. Campbell pointing a gun at her, telling her to get into a van. Ms. Circo complied, and Mr. Rice drove to Portland. While in the van, Ms. Circo noticed a Chucky doll tied to Mr. Campbell. The van was recovered by law enforcement in Portland.

The State charged Mr. Campbell with one count of first degree robbery with a deadly weapon enhancement, one count of theft of a motor vehicle, and one count of first degree burglary with a deadly weapon enhancement. As to the first degree robbery charge, the victim named in the information was Debra Vargas. As to the first degree

burglary charge, the victim named in the information was Debra Vargas and/or James Stethem.

Mr. Campbell and Mr. Rice were codefendants at trial. The jury was given to-convict instructions for each crime. Pertinent here, for first degree robbery, the court instructed the jury that it needed to find that Mr. Campbell or an accomplice was "*armed* with a deadly weapon" in the commission of the crime. Clerk's Papers (CP) at 88-89 (emphasis added). This instruction differed from the information that charged Mr. Campbell of "*display*[*ing*] what appeared to be a firearm or other deadly weapon, to wit: a pipe and/or a firearm." CP at 73 (emphasis added).

For first degree burglary, the court instructed the jury that it needed to find that Mr. Campbell was "*armed* with a deadly weapon." CP at 100 (emphasis added). This language was consistent with the information that alleged Mr. Campbell was "*armed* with a pipe or firearm, a deadly weapon." CP at 73 (emphasis added).

For the jury to decide the deadly weapon enhancements, the court instructed the jury that it needed to find Mr. Campbell or an accomplice was "armed with a deadly weapon at the time of the commission of the crimes of Robbery in the First Degree and/or Burglary in the First Degree . . . even if only one deadly weapon [was] involved." CP at 111. The instruction further provided that "[a]ny metal pipe or bar used or intended to be

5

used as a club is a deadly weapon. A pistol, revolver or any other firearm is also a deadly weapon whether loaded or unloaded." CP at 111. This weapon enhancement instruction differed from the enhancement notice in the information. The enhancement notice alleged that Mr. Campbell "was armed with a deadly weapon and/or a weapon was easily accessible . . . to-wit: *A PIPE.*" CP at 73 (emphasis added). In short, the enhancement instruction referenced a pipe or a firearm, but the enhancement notice in the information referenced only a pipe.

Mr. Campbell did not object or take exception to the jury instructions at trial. A jury found Mr. Campbell guilty on all charges, and found that Mr. Campbell (or his accomplice)[2] was armed with a deadly weapon during the commission of the crimes.

The trial court imposed consecutive sentences on Mr. Campbell's first degree robbery and first degree burglary convictions. In addition, the trial court increased the criminal history score for first degree robbery to include the current felony conviction for first degree burglary. In doing so, the court found that the convictions did not constitute the same criminal conduct because (a) differing victims in the two crimes, (b) differing

---

[2] The special verdict forms state the jury's finding that Mr. Campbell was armed with a deadly weapon. However, because of the accomplice instruction, it cannot be determined which of the two men the jury determined was armed with the firearm. The accomplice instruction stated in part: "If one person is armed with a deadly weapon, all accomplices are deemed to be so armed, even if only one deadly weapon is involved."

intent of the two crimes, and (c) the State's interest in punishing a burglary separately from other crimes, as provided for in RCW 9A.52.050. The court sentenced Mr. Campbell to 153 months for the first degree robbery conviction and another 87 months for the first degree burglary conviction. Mr. Campbell appealed.

## ANALYSIS

*A.     Whether the State properly relied on the firearm to support the deadly weapon element of first degree robbery and the deadly weapon enhancement.*

Mr. Campbell challenges the State's reliance on the firearm to support the deadly weapon element of his crimes. First, he contends that the State could not use the firearm to support the deadly weapon enhancement because in the information, the State specifically alleged that the pipe was the deadly weapon used for purposes of the enhancement and cited the applicable statute. Mr. Campbell maintains that because the State specifically designated the pipe, the pipe was the only weapon that could be used to support the deadly weapon enhancement at trial.

"In all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation." U.S. CONST. amend. VI. "An information must state all the essential statutory and nonstatutory elements of the crimes charged." *State v. Tvedt*, 153 Wn.2d 705, 718, 107 P.3d 728 (2005). Generally, an information must

---

CP at 111 (Instruction 27).

7

be worded so that a person of common understanding will know what acts constitute the criminal offense. RCW 10.37.052(2). The exact words of the relevant statute need not be used if words conveying the same meaning are used to give reasonable notice to the defendant of the charge. *State v. Kjorsvik*, 117 Wn.2d 93, 108-09, 812 P.2d 86 (1991).

Where a criminal defendant challenges the sufficiency of a charging document for the first time on appeal, we construe the documents liberally in favor of validity. *Id.* at 104-05. In liberally construing the information, we apply the following two-part test, asking (1) whether the necessary facts appear in any form or can be found by liberal construction in the document, and, if so, (2) whether the defendant can show that the inartful language caused a lack of notice. *Id.* at 105-06.

The first prong of this test rests solely on the language on the face of the charging document. *Id.* at 106. We read the charging document "as a whole, according to common sense and including facts that are implied." *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010). Loosely or inartfully drawn charging documents are forgiven on appeal if the necessary elements appear in the document in any form. *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775 (1992). The second prong allows us to consider whether the defendant received actual notice. *Kjorsvik*, 117 Wn.2d at 106.

8

Here, the information is sufficient under the *Kjorsvik* test to give Mr. Campbell notice that the pipe or the firearm could be used to support the deadly weapon enhancement. The information contained the necessary fact that a firearm and/or pipe was used in commission of the charged offenses. The State alleged in the information that a firearm and/or pipe was the deadly weapon involved in the crime for first degree burglary and first degree robbery. The deadly weapon enhancements were associated with both of these crimes. A liberal reading of the information provides Mr. Campbell with notice that the deadly weapons involved in the underlying crimes could also be used to support the deadly weapon enhancements added to those crimes.

Next, Mr. Campbell challenges the use of the firearm to support the convictions for first degree robbery and first degree burglary. He contends that the jury instructions for these crimes were unclear because the to-convict jury instructions referred to a deadly weapon and not a firearm. Thus, the deadly weapon element became the law of the case to be proven, and not the firearm.

"Generally, a party must object to an instruction at trial in order to preserve the issue for appellate review." *State v. Nicholas*, 55 Wn. App. 261, 273, 776 P.2d 1385 (1989). Jury instructions not objected to become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

9

To-convict jury instructions must contain all of the elements of a crime as the instruction serves as a tool for a jury to use to measure the evidence and determine guilt or innocence. *State v. Saunders*, 177 Wn. App. 259, 263, 311 P.3d 601 (2013) (quoting *State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003)). "'Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law.'" *Id.* at 270 (quoting *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002)).

Mr. Campbell did not object to the jury instructions at trial. Nor does he claim a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Instructional errors are of constitutional magnitude only where the jury is not instructed on every element of the charged crime. *State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992). "As long as the instructions properly inform the jury of the elements of the charged crime, any error in further defining terms used in the elements is not of constitutional magnitude." *Id.*

Here, the jury instructions sufficiently state the elements of the crime including being armed with a deadly weapon. Mr. Campbell's alleged error involves use of "deadly weapon" instead of "firearm" in the elements. This error is not of constitutional magnitude and, unless objected to at trial, is not reviewable on appeal.

10

Even if we were to consider the merits of the argument, Mr. Campbell's contention fails. The jury instructions when read as a whole properly informed the jury that a firearm was a deadly weapon. The deadly weapon instruction defined a "deadly weapon" as "any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." CP at 94. The definitional instruction for firearm referred to a firearm as a weapon. Also, the definitional instruction for first degree robbery includes the language "firearm or other deadly weapon." CP at 87. The definitional instruction for first degree burglary includes the language "deadly weapon." CP at 99. As a whole, the jury instructions were sufficient to inform the jury that the firearm satisfied the deadly weapon element of first degree burglary and first degree robbery.

Based on the charging information and the jury instructions, there was no error in allowing the State to rely on the firearm to establish the deadly weapon element for first degree robbery and first degree burglary.

11

B.      *Whether the defendant was adequately notified of the alternative means of committing first degree robbery so that the variance between the charging information and the trial court's instructions was harmless error.*

Mr. Campbell contends that there was a variance between the information and the to-convict jury instructions for first degree robbery because the means for committing the crime differed. The information alleged that Mr. Campbell *displayed* what appeared to be a deadly weapon; whereas the jury instruction uses the phrase, "*armed* with a deadly weapon." He contends that this variance violates the essential elements rule.

Mr. Campbell confuses the issue of variance with the essential elements rule. The essential elements rule concerns whether the defendant received sufficient notice within the charging information of the elements of the charged offense. Variance concerns those situations where the charging information is sufficient, but a question arises of whether the trial court erred in instructing the jury on an alternative uncharged means of committing the charged offense. Because both the essential elements rule and variance implicate the Sixth Amendment and the Washington Constitution article I, section 22, it is not uncommon for the arguments to be muddled. However, the arguments are distinct. *See In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 536-37, 309 P.3d 498 (2013).

"[W]here the statute provides that a crime may be committed in different ways or by different means, it is proper to charge in the information that the crime was committed

in one of the ways or by one of the means specified in the statute, or in all the ways." *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942). When the charging information alleges only one alternative means of committing a crime, it is reversible error for the jury to consider other means by which the crime could have been committed. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). When challenged on direct appeal, this error is presumed to be prejudicial unless the State can show harmless error. *Brockie*, 178 Wn.2d at 538-39. For first degree robbery, the two alternatives of "displaying what appeared to be a firearm or other deadly weapon" and being "armed with a deadly weapon" are distinct alternative means and are not interchangeable. *Id.* at 538.

In *Brockie*, the court addressed a conviction for first degree robbery where a jury was instructed on the alternative means of being armed with a deadly weapon even though Mr. Brockie was charged only with displaying what appeared to be a deadly weapon. *Id.* Before applying the harmless error standard, the court held that Mr. Brockie was given notice only on one particular means charged when the State chose to specify that means in the charging document. "Nothing in the charging information put [Mr.] Brockie on notice that he might be charged with the alternative means of first degree robbery while armed with a deadly weapon." *Id.*

13

Here, unlike *Brockie*, Mr. Campbell had notice that he was being charged with both alternative means. The charging language for first degree robbery alleged that Mr. Campbell "displayed what appeared to be a firearm or other deadly weapon," whereas the language for the linked deadly weapon enhancement alleged the alternative means of being "armed with a deadly weapon." CP at 73. Thus, Mr. Campbell had notice that he was being charged with both "displayed what appeared to be a firearm or other deadly weapon" and "being armed with a deadly weapon." While the to-convict instruction varied from the information because the instruction stated "armed with a deadly weapon," Mr. Campbell was on notice that he was required to defend against "displayed what appeared to be a firearm or other deadly weapon," both alternative means of committing first degree robbery. The variance between the charging information and the to-convict instruction for first degree robbery therefore does not result in reversible error.

> C.   *Whether the State proved beyond a reasonable doubt the deadly weapon element of first degree robbery, first degree burglary, and the deadly weapon enhancement.*

Mr. Campbell challenges the sufficiency of the evidence to support his convictions for first degree robbery, first degree burglary, and the deadly weapon enhancements. Each contain a deadly weapon element, and Mr. Campbell contends that the State failed

14

to prove that he was armed with a deadly weapon. He maintains that the State did not present evidence the pipe was used as a deadly weapon.

Evidence is sufficient to support a conviction if, in viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). The reviewing court should consider "whether the totality of the evidence is sufficient to prove all the required elements." *State v. Ceglowski*, 103 Wn. App. 346, 350, 12 P.3d 160 (2000). Although all jurors must agree that the crime has been committed, they are not required to be in agreement on the means by which the crime occurred. *See State v. Whitney*, 108 Wn.2d 506, 511-12, 739 P.2d 1150 (1987).

The trial court instructed the jury that "[i]f one person is armed with a deadly weapon, all accomplices are deemed to be so armed, even if only one deadly weapon is involved." CP at 111 (Instruction 27). This instruction is a correct statement of the law and was not objected to. Here, the undisputed testimony was that one of the men who broke into Ms. Vargas's apartment was armed with a firearm. We conclude that there was sufficient evidence for a jury to find that a deadly weapon was used either by Mr.

15

Campbell or his accomplice so as to meet the deadly weapon element of first degree robbery, first degree burglary, and the weapon enhancement allegations.

D.      *Whether counsel's assistance was ineffective.*

Mr. Campbell argues that he received ineffective assistance of counsel. He first argues that his counsel was ineffective because he failed to request an instruction on second degree robbery. "To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceedings would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

The threshold for deficient performance is high; a defendant must overcome a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). When counsel's conduct can be characterized as legitimate trial strategy or tactics, the performance is not deficient. *McFarland*, 127 Wn.2d at 336. The "all or none" tactic of not proposing an instruction on a lesser

16

included offense is a legitimate trial tactic. *State v. Grier*, 171 Wn.2d 17, 42-43, 246 P.3d 1260 (2011).

Mr. Campbell fails to establish ineffective assistance of counsel. First, defense counsel's performance was not deficient because he failed to request a lesser included instruction. Not requesting the lesser instruction was a legitimate and reasonable trial tactic because it fit with Mr. Campbell's trial theory that he did not commit the offense, as opposed to a strategy that he only committed the lesser offense. Also, Mr. Campbell did not show prejudice because proposing the lesser instruction would not have changed the outcome. The evidence supported the jury finding that Mr. Campbell or his accomplice was armed with a firearm and, therefore, Mr. Campbell committed first degree robbery.

Mr. Campbell next argues that his counsel was ineffective for failing to alert the trial court that the pipe was the only weapon relied upon in the information for the deadly weapon enhancement. However, Mr. Campbell fails to show how he was prejudiced by this error. As noted above, the trial court did not err in how it instructed the jury, and even had defense counsel raised the issue of variance, the prosecution would have been entitled to an enhancement instruction that specified "deadly weapon" or "firearm."

Similarly, defense counsel did not commit error by failing to object to any jury instruction that referenced a firearm. As previously stated, the information as a whole

17

No. 30166-4-III
*State v. Campbell*

alerted Mr. Campbell that a firearm could support the crimes charged and the deadly weapon enhancement. We, therefore, reject Mr. Campbell's ineffective assistance of counsel arguments.

    E.    *Whether the first degree burglary and first degree robbery constituted the same criminal conduct and counted as one crime for sentencing purposes.*

Mr. Campbell contends that the trial court was not allowed to sentence him for both first degree burglary and first degree robbery because the crimes constituted the same criminal conduct. RCW 9.94A.589(1)(a) provides:

> [W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535.[3] *"Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.*

(Emphasis added.)

A defendant has the burden of proving that the current offenses constitute the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013). The

---

[3] Here, the trial court entered a consecutive sentence for Mr. Campbell's first degree robbery and first degree burglary convictions. The consecutive sentence is

18

crimes will not be considered the same criminal conduct if the defendant fails to prove any of the three elements of the statute. *Id.* at 540. Crimes affecting more than one victim cannot encompass the same criminal conduct. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987). Crimes committed in separate rooms in the same residence are committed in "separate places." *See State v. Stockmyer*, 136 Wn. App. 212, 219-20, 148 P.3d 1077 (2006). Here, the first degree robbery and the first degree burglary affected two victims and were committed in separate rooms. Therefore, the two offenses do not constitute the same criminal conduct.

In addition, there is another independent basis to affirm the trial court: the burglary anti-merger statute, RCW 9A.52.050, which provides: "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." For multiple current convictions, a sentencing court has the discretion to separately punish a crime committed during a burglary, regardless of whether it and the burglary encompassed the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 781, 827 P.2d 996 (1992).[4]

---

permitted under RCW 9.94A.535(2)(c), and is not challenged by Mr. Campbell.

[4] Mr. Campbell argues that the language we rely upon in *Lessley* is dicta. Regardless, this is a unanimous statement by our highest court that has gone unchallenged for over 20 years. We choose to follow it.

Mr. Campbell also cites *State v. Williams*, 176 Wn. App. 138, 307 P.3d 819

No. 30166-4-III
*State v. Campbell*

*F.     Whether the judgment and sentence contains any scrivener's errors.*

Mr. Campbell also contends that section 2.4 of the judgment and sentence contains two scrivener's errors. First, he contends that this section indicates that he waived his right to a jury trial. We acknowledge this error and remand to the trial court for the purpose of making the correct notation on the judgment and sentence. Second, he contends that this same section erroneously indicates that the prosecutor recommended a similar sentence to the one imposed by the court. We find no error here. Mr. Campbell received an exceptional sentence as recommended by the prosecutor, and although the sentence was less than recommended, the sentence was "similar."

*G.     Whether the trial court erred when it ordered Mr. Campbell to pay legal financial obligations.*

For the first time on appeal, Mr. Campbell challenges the imposition of legal financial obligations (LFOs). He contends that the court erroneously imposed special costs without a record of what those costs were, and neglected to enter findings on his ability to pay.

---

(2013), *review granted*, 180 Wn.2d 1001, 319 P.3d 800 (2014) for the proposition that a sentencing court lacks discretion to count *prior* convictions separately under the burglary anti-merger statute. However, in that case, this court held that the burglary anti-merger statute applies to *current* offenses. *Id.* at 143. Here, we are applying the statute to current convictions, not prior convictions. *Williams*, therefore, is distinguishable.

20

No. 30166-4-III
*State v. Campbell*

Challenges to LFOs must be raised at the trial court. A failure to object to a cost imposed by the trial court waives the right to challenge the issue on appeal. *State v. Danis*, 64 Wn. App. 814, 822, 826 P.2d 1096 (1992). Also, challenges to a defendant's ability to pay LFOs which are not raised to the trial court will not be addressed on appeal. Rather, the meaningful time to examine the defendant's ability to pay is when the government seeks to collect the debt. *State v. Duncan*, 180 Wn. App. 245, 250-51, 327 P.3d 699 (2014).

We affirm the conviction and sentence, except we remand to the trial court to correct the scrivener's error which incorrectly states that Mr. Campbell waived his right to a jury trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

21