# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46905-7-II |
| Respondent, | |
| v. | |
| JEREMY THOMAS STEVENS, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Jeremy Stevens appeals his convictions of three counts of second degree child rape regarding a minor named SN and one count of sexual exploitation of a minor regarding a minor named SS. He also appeals his exceptional sentence.

We hold that (1) sufficient evidence supports two of Stevens's second degree child rape convictions based on charges that Stevens raped SN when she was 12 years old, even though SN testified that she was 11 years old when the rapes occurred; (2) sufficient evidence supports the third second degree child rape conviction despite an absence of penetration because there was evidence of oral to genital contact between Stevens and SN; (3) sufficient evidence supports the sexual exploitation of a minor conviction despite conflicting trial testimony; (4) the trial court did not err in giving the to-convict instructions that included a date range for when the rapes occurred even though the State elected to prove each charge with specific conduct; and (5) the special verdict forms for exceptional sentences based on an ongoing pattern of sexual abuse were

proper even though they omitted reference to the requirement that multiple incidents occurred over a prolonged period of time. Accordingly, we affirm Stevens's convictions and sentence.

FACTS

Stevens and SN's mother have been close friends since they were in junior high school. Stevens has known SN since SN's birth on April 28, 1999. Stevens regularly socialized with SN's mother and stepfather. Stevens's father and stepmother, Kerry and Sue Stevens, also were good friends with SN's mother and stepfather and socialized with them.

*Birthday and Babysitting Incidents*

At some point, SN began babysitting Stevens's young daughter, occasionally spending the night at Stevens's home when he worked late at night. On the night of SN's birthday, Stevens engaged in sexual intercourse with her. The State refers to this incident as the "birthday incident." A few weeks later, SN babysat Stevens's daughter and spent the night. Stevens again had sexual intercourse with SN. The State refers to this incident as the "babysitting incident."

There was conflicting testimony at trial when these incidents occurred. SN explained that the first time they had sexual intercourse was on her 11th birthday, which would have been April 29, 2010. However, she also testified that the incidents occurred when she was in the 6th grade. SN's counselor's testified that SN turned 12 in the 6th grade on April 29, 2011. In addition, SN's stepfather testified that SN was 12 years old when she started babysitting for Stevens.

*Fair Incident*

On August 24, 2012, the evening before the Kitsap County Fair began, SN and her friend SS (who was a year older than SN) stayed at Kerry and Sue's home. Stevens came to the house

after getting off work and the three of them stayed up after Kerry and Sue went to bed. Stevens and the girls went outside and Stevens performed oral sex on SN in the presence of SS.

Stevens later went upstairs to bed but came down three times, each time explaining that he could not sleep because he was sexually aroused. The third time, he told the girls they should "do stuff." Report of Proceedings (RP) at 316. SS and SN then lay down in the family room and Stevens watched from the stairway as SN touched SS's vagina. After they stopped, Stevens commented, "So you guys did it." RP at 316. SN responded, "Yeah." RP at 316. According to SS, Stevens then wanted SS to have sex with him and SN, but SS refused. The State refers to this incident as the "fair incident."

*Disclosure and Charges*

The allegations against Stevens came to light in December 2012 when SS told her mother that SN was having sex with Stevens.[1] SS's mother told the SN's mother and stepfather, who initially decided not to report the situation to the police. In April 2013, SN disclosed what had happened to a school counselor, who contacted law enforcement.

The State charged Stevens with two counts of first degree child rape (counts I and II) for the birthday and babysitting incidents based on SN being 11 years old. Alternatively, it charged Stevens with two counts of second degree child rape (counts III and IV) for these same incidents based on SN being 12 years old. The State charged him with two additional counts of second degree child rape for the fair incident (count V) and another incident referred to as the "pre-Thanksgiving incident" (count VI). The State also charged Stevens with attempted third degree

---

[1] According to SN, the last time she had sexual intercourse with Stevens was before Thanksgiving 2012 and stopped because Stevens went out of state to a trucking school.

3

child molestation (count VII) and sexual exploitation of a minor (count VIII), both against SS during the fair incident. Further, the State alleged that the four rapes of SN were part of an ongoing pattern of sexual abuse over a prolonged period of time.

*Trial and Sentence*

At trial, the State elected to rely on single acts for the specific counts. As a result, the trial court instructed the jury that it must unanimously agree that the State proved the specific act for each count. The trial court also instructed the jury that the acts supporting convictions on the various charges could occur over a two-year period. During closing argument, the State identified the specific incident that related to each charge.

The trial court's jury instructions included special verdict forms for the jury to determine whether Stevens committed counts I through V as part of an ongoing pattern of sexual abuse. Stevens did not object to these special verdict forms.

The jury convicted Stevens of three counts of second degree child rape and one count of sexual exploitation of a minor. The jury acquitted Stevens of the two counts of first degree child rape, one count of second degree child rape (the pre-Thanksgiving incident), and attempted third degree child molestation.

The jury also found by special verdict that Stevens committed the second degree child rape offenses as part of an ongoing pattern of sexual abuse. Based on this aggravating circumstance, the trial court imposed an exceptional sentence.

Stevens appeals his convictions and sentence.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

    1.    Standard of Review

Stevens challenges the sufficiency of the evidence presented for all of his convictions. The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In evaluating a sufficiency of the evidence claim, we assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Id.*

    2.    Second Degree Rape of a Child

        a.    Birthday and Babysitting Incidents

Stevens claims that the evidence did not support his convictions of second degree rape of a child because SN testified that she was 11 years old when these incidents took place, not 12 years old or older as the second degree rape of a child statute requires. We disagree.

Under RCW 9A.44.076, a person is guilty of first degree child rape when the person has sexual intercourse with another who is under 12 years old, is not married to the victim, and is at least 36 months older than the victim. Second degree child rape involves the same elements except that the victim must be at least 12 years old but less than 14 years old. RCW 9A.44.073.

Here, Stevens relies on SN's testimony that the birthday and babysitting incidents occurred when she was 11 years old. However, there also was evidence that those incidents

occurred when SN was 12. SN testified that she was in 6th grade when Stevens first raped her. Based on her birthdate and enrollment information, the evidence showed that SN turned 12, not 11, when she was in the 6th grade. Further, while Shannon thought that SN started babysitting for Stevens when she was 11 years old, SN's stepfather testified that SN was 12 years old when she started babysitting for Stevens. The jury could have found that SN was mistaken when she stated that the first rape occurred on her 11th birthday.

There also was evidence that the first rape occurred even later than SN's 12th birthday. SN was adamant that the first rape occurred when Stevens was living in what the witnesses referred to as the Bielmeier residence. Stevens testified that he did not move into that residence until October 2011, six months after SN's 12th birthday. SN also admitted at trial that she had stated in an interview with defense counsel that the first rape actually occurred when she was in the 7th grade.[2] And SN testified that the first rape occurred when Stevens worked for Waste Management, and Stevens testified that he worked there only in July and August of 2012. SN was 13 years old at that time.

Stevens also points out that SN's testimony that the first rapes occurred when Stevens was working for Waste Management was inconsistent with her testimony that the first rape occurred on her birthday because Stevens testified that he worked for Waste Management in July and August of 2012. However, the jury could have found that SN was mistaken about the first rape occurring on her birthday or about where Stevens was working when the rapes occurred.

---

[2] SN explained at trial that after the interview she figured out that the first rape occurred when she was in the 6th grade.

The jury was presented with conflicting evidence regarding SN's age when the birthday and babysitting incidents occurred. But there was evidence to support the jury's determination that these incidents occurred when SN was 12 years old or older. We defer to the trier of fact's resolution of conflicting testimony. *Homan*, 181 Wn.2d at 106. Accordingly, we hold that sufficient evidence supports Stevens's convictions of second degree child rape during the birthday and babysitting incidents.

b.   Fair Incident

Stevens argues that the State failed to prove that he had sexual intercourse with SN during the fair incident at his parents' home. He claims that there was no evidence of penetration and therefore no evidence of intercourse. We disagree.

RCW 9A.44.010(1)(a) defines sexual intercourse as "any penetration, however slight." However, RCW 9A.44.010(1)(c) also defines sexual intercourse as oral to genital contact: "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." Both SN and SS testified that Stevens had oral to genital contact with SN. Therefore, evidence of penetration was unnecessary to prove that Stevens had sexual intercourse with SN.

We hold that sufficient evidence supports Stevens's conviction of second degree child rape during the fair incident.

3.   Sexual Exploitation of a Minor

Stevens argues that the State failed to show that he caused the sexual contact between SN and SS and therefore the evidence was insufficient to support his conviction for sexual exploitation of a minor. He argues that there were inconsistencies between the testimony of SS

7

and the testimony of SN, and therefore the jury could not have found Stevens guilty beyond a reasonable doubt. We disagree.

Under RCW 9.68A.040(b), a person commits sexual exploitation of a minor when that person "[a]ids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance."

SS testified that after Stevens engaged in oral sex with SN, he came down from his bedroom and explained that he could not sleep because he was sexually aroused. He then told SN and SS that they should "do stuff," and then watched as SN touched SS's vagina. RP at 316. He also acknowledged their behavior. This was sufficient evidence to support a finding that he invited the girls to engage in sexually explicit conduct while he watched.

Stevens emphasizes that SS acknowledged that she originally stated that Stevens was not present, and that SN testified that Stevens did not suggest that she and SS do anything and that they all simply went to bed. He cites to *State v. Alexander*, 64 Wn. App. 147, 822 P.2d 1250 (1990), and argues that the State failed to present sufficient evidence because of these inconsistencies. In *Alexander*, Division One of this court overturned multiple child rape convictions, in part because of extreme inconsistencies in the child victim's testimony at trial. 64 Wn. App. at 157-58. However, the court also held that that the victim's testimony was impermissibly bolstered, the prosecutor's questioning elicited impermissible evidence that the defendant was the abuser, and the prosecutor's attempts to repeatedly instill inadmissible evidence in the juror's minds amounted to misconduct. *Id.* at 153-56. As a result, the court reasoned that "[w]e cannot conclude that a rational jury would have returned the same verdict

had . . . [the] bolster[ed] testimony and the prosecutor's improper remarks been properly excluded." *Id.* at 158.

*Alexander* does not support the proposition that evidence is insufficient if a victim contradicts her prior statement on an issue or if the testimony of two witnesses conflict. The court simply held under the unique facts of that case that because of the "extreme" inconsistencies in the victim's testimony coupled with other errors, the evidence was too "confused" to allow the jury to find the defendant guilty. *Id.* Therefore, *Alexander* is inapplicable.

SS's testimony provides sufficient evidence that Stevens invited SS and SN to engage in sexually explicit conduct and then watched as they did so. The jury was free to disregard SN's contrary testimony, and once again we defer to the jury's resolution of conflicting testimony. *Homan*, 181 Wn.2d at 106. Accordingly, we hold that sufficient evidence supports Stevens's conviction for sexual exploitation of a minor.

B.      TO-CONVICT INSTRUCTIONS

Stevens argues because the State elected to rely on specific incidents to prove the specific counts, the trial court erred in stating in the to-convict instructions that the jury was only required to find that the offenses occurred within a two-year time period. We disagree.

Stevens presents no authority stating that once the State makes an election to rely on specific conduct that it also must rely on a specific date rather than a range of dates. Here, the State expressly identified the specific incidents that related to each charged count. However, as discussed above, there was conflicting evidence as to when the incidents occurred. The time the offense occurred is not an essential element of child rape, and therefore the time of the rape need

not be proved with specificity to sustain a conviction.  *See State v. Hayes*, 81 Wn. App. 425, 433, 437, 914 P.2d 788 (1996).  Therefore, it was not improper for the trial court to include a date range in the to-convict instructions.

Stevens also suggests that the State failed to make a proper election.  He notes that the jury was confused about whether it had to rely on a specific incident for each count of child rape.  He notes that during the first day of deliberations, the jury asked, "Do counts 3, 4, 5, & 6 correspond to a specific incident and/or date? i.e. birthday, babysitting, fair, & pre-Thanksgiving?"  Clerk's Papers (CP) at 163.  The trial court responded, "Yes."  CP at 163.  The next day, the jury asked, "Does Count 3 refer to the April 28, 2011 birthday only?"  CP at 210.  The trial court instructed the jury to refer to the answer provided earlier.  Stevens argues that because the jury was confused, the possibility exists that they were not unanimous as to the act forming the conviction for each count.

However, the State very clearly told that jury during closing argument that the birthday incident pertained to count I and count III, the babysitting incident pertained to count II and count IV, and the fair incident pertained to count V.[3]  Further, the trial court answered the jury's questions, indicating that each count related to a separate incident.  We presume the jury followed this instruction absent evidence to the contrary.  *State v. Perez-Valdez*, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011).  Stevens presents no such evidence.

---

[3] Because the State elected and chose to argue that each count pertained to a specific incident, the unanimity problem addressed in *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), does not apply here.  *See State v. Carson*, 184 Wn.2d 207, 228-29, 357 P.3d 1064 (2015) (State's election of specific acts for each count makes a *Petrich* instruction unnecessary).

We hold that the trial court did not err in including a date range for when the offenses occurred in the second degree child rape to-convict instructions.

C.      SPECIAL VERDICT FORMS FOR EXCEPTIONAL SENTENCE

Stevens argues that his exceptional sentence is improper because the trial court's special verdict forms omitted part of the statutory language for the ongoing pattern of sexual abuse aggravating factor. Stevens argues that this omission unfairly relieved the State of its burden of proof.[4] We disagree.

RCW 9.94A.535(3)(g) provides as an aggravating factor that "[t]he offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time." The special verdict omitted the phrase "manifested by multiple incidents over a prolonged period of time." CP at 205-07.

However, we review jury instructions in the context of the instructions as a whole. *State v. Saunders*, 177 Wn. App. 259, 270, 311 P.3d 601 (2013). Here, the trial court instructed the jury that "[a]n 'ongoing pattern of sexual abuse' means multiple incidents of abuse over a prolonged period of time. The phrase "'prolonged period of time' means more than a few weeks." CP at 197. Therefore, the special verdict forms necessarily incorporated the "multiple incidents over a prolonged period of time" requirement.

The trial court's aggravating factor instruction and the special verdict forms made it clear that in order to find an "ongoing pattern of sexual abuse" the jury was required to find "multiple

---

[4] Stevens did not object to the language of the special verdict forms at trial or to the trial court's failure to give his proposed special verdict forms, which included the omitted statutory language. However, the State does not argue that he waived his right to challenge the special verdict forms on appeal, and therefore we do not address this waiver issue.

incidents of abuse over a prolonged period of time." Accordingly, we hold that the trial court's special verdict forms did not relieve the State of its burden of proof.

We affirm Stevens's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

MELNICK, J.

SUTTON, J.