# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47343-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| GUY MILTON SAMPLE, III, | |
| Appellant. | |

MAXA, A.C.J. – Guy Sample appeals his conviction of attempting to elude a pursuing police vehicle[1] and his sentence. Sample drove a motorcycle evasively and at high speeds to avoid being pulled over by a uniformed police officer in a marked vehicle. The officer discontinued the chase and later found the motorcycle abandoned. Sample was arrested after arriving in a truck at the location of the abandoned motorcycle and then attempting to flee.

We hold that (1) the State presented sufficient evidence that Sample was the driver of the motorcycle; (2) as the State concedes, the trial court erred in calculating the offender score without evidence of Sample's prior convictions; and (3) we cannot consider Sample's claims asserted in his statement of additional grounds (SAG) because they concern matters outside the record. Accordingly, we affirm Sample's conviction of attempting to elude a pursuing police vehicle, but we remand for resentencing.

---

[1] Sample also was convicted of resisting arrest. He does not appeal that conviction.

FACTS

On July 21, 2014, Roy police officer Tillman Atkins was on patrol in uniform and in a marked vehicle. He was driving behind a silver motorcycle. There were two people on the motorcycle. The driver wore a leather jacket, the passenger wore a striped sweatshirt, and both were wearing helmets. Atkins believed that the driver was a man based on size and physical build and that the passenger was a woman based on the long hair he could see coming out of the helmet.

Atkins watched the motorcycle make an abrupt U-turn to head south. Atkins turned around to follow the motorcycle. While Atkins was following the motorcycle, the motorcycle passed him again headed north. Atkins turned on his lights and siren and made a U-turn to pursue the motorcycle. The motorcycle did not stop. Atkins eventually pursued at speeds near 100 miles per hour as the motorcycle swerved into oncoming lanes to pass cars.

Atkins became concerned for the safety of other drivers and the motorcycle passenger and ended his pursuit. He lost sight of the motorcycle but continued to drive around the area in search of it. After about five minutes, Atkins saw a woman walking along the street who was wearing a sweatshirt that was similar to the motorcycle passenger's sweatshirt. She was walking at a fast pace and her long hair was messed up on top, consistent with wearing a helmet. Atkins believed the woman was the motorcycle passenger. She was shaky and upset. Atkins found out that her name was Marie Collins, and he later discovered that she was Sample's wife.

Later that day there was a report of an abandoned motorcycle matching the description of the motorcycle involved in the pursuit. The location of the motorcycle was not far from where Atkins encountered Collins. Atkins responded to the report and saw the motorcycle in some

brush underneath a kiddie pool. There were also two helmets and a leather jacket nearby. Atkins recognized the motorcycle as the one he pursued earlier and recognized the helmets and leather jacket as what the driver and passenger had been wearing.

In the pocket of the leather jacket, Atkins found a wet and crumpled court document with Sample's name and signature on it. Atkins used the motorcycle's license plate number to discover that Sample was one of two registered owners.

As they were waiting for a tow truck to take the motorcycle away, Atkins saw a pickup truck pull onto the street and stop. The truck backed up quickly and drove away in the other direction. Another officer followed the truck and saw Sample jump out of the passenger side while the truck was moving. There was a pursuit on foot and Sample was caught and arrested.

The State charged Sample with one count of attempting to elude a pursuing police vehicle and one count of resisting arrest. The jury found Sample guilty of both counts. The jury also found by special verdict that Sample placed others at risk of physical injury or harm while eluding the police vehicle.

At sentencing, the trial court determined that Sample's offender score was nine plus. The offender score was based on multiple previous convictions, including three from Oregon, listed in a stipulation the State prepared. But Sample did not sign the stipulation to his prior record and the State did not submit evidence of the previous convictions.

Sample appeals his attempting to elude a pursuing police vehicle conviction and his sentence.

ANALYSIS

A.     SUFFICIENCY OF THE EVIDENCE

Sample argues that the State did not present sufficient evidence that he attempted to elude a pursuing police vehicle because the State did not prove that he was in fact the driver of the motorcycle. We disagree.

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We assume the truth of the State's evidence and all reasonable inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106. We treat circumstantial evidence as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). And we defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

A driver is guilty of attempting to elude a pursuing police vehicle when he or she "willfully fails or refuses to immediately bring his or her vehicle to a stop" and "drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop." RCW 46.61.024(1). Sample's challenge is limited to proof of identity.

The State presented ample circumstantial evidence that Sample was the driver of the motorcycle. First, the motorcycle was registered to Sample. This evidence connected Sample to the motorcycle.

Second, the leather jacket found near the motorcycle looked like the jacket worn by the driver and contained a paper with Sample's name and signature on it. This evidence created an inference that Sample was the person wearing the jacket while driving the motorcycle.

Third, Sample appeared in a pickup truck at the place where the motorcycle had been hidden. This evidence created an inference that Sample was coming back to retrieve his motorcycle and that Sample was the one who hid the motorcycle after the pursuit.

Fourth, when Sample saw the officers at the place where the motorcycle was hidden he fled. This evidence created an inference that Sample was conscious of his guilt. *See State v. McDaniel*, 155 Wn. App. 829, 854, 230 P.3d 245 (2010).

Sample argues that the paper found in the jacket was faded and that the name "Guy Sample" could have been in reference to other family members that share the same name. He also argues that the State did not investigate the other person listed as a registered owner of the motorcycle. Finally, he argues that as a co-owner he would have been interested in retrieving his motorcycle, even if he had not hidden it. These may be reasonable arguments. But we defer to the trier of fact's evaluation of the evidence. *Homan*, 181 Wn.2d at 106.

The State presented sufficient evidence to allow the jury to find that Sample was in fact the driver of the motorcycle. Accordingly, we affirm Sample's attempting to elude a pursuing police vehicle conviction.

B.      OFFENDER SCORE CALCULATION

Sample argues, and the State concedes, that the trial court erred in calculating his offender score because the State did not produce evidence of his prior convictions. We agree.

When calculating an offender score, the trial court may not rely on any more information than what is "admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." RCW 9.94A.530(2). If the defendant does not stipulate to a criminal history summary, the State has the burden to prove the existence of prior convictions by a preponderance of the evidence. *State v. Hunley*, 175 Wn.2d 901, 917, 287 P.3d 584 (2012). And the State must prove that out-of-state convictions are comparable to felony offenses under Washington law for those convictions to be included in the offender score. RCW 9.94A.525(3); *State v. Jones*, 183 Wn.2d 327, 345, 352 P.3d 776 (2015).

Sample did not stipulate to his criminal history summary. The State did not present evidence of Sample's prior convictions and it did not show that the prior Oregon convictions were comparable to felony offenses under Washington law. Therefore, the trial court erred by relying on an unacknowledged and unsupported criminal history summary to calculate Sample's offender score. The remedy is to remand for resentencing at which both parties will have the opportunity to present evidence to ensure that Sample's offender score is calculated accurately and based on a complete criminal history. *Hunley*, 175 Wn.2d at 915-16.

C.      SAG CLAIMS

Sample makes two claims in his SAG. First, he asserts that he was deprived of due process because the State's evidence was not checked in to the court clerk 14 days before trial. Second, he asserts that his defense counsel was ineffective for not investigating, not listening to his witnesses including his employer who allegedly signed a statement that Sample was working at the time, and refusing to let him talk to the judge.

No. 47343-7-II

Both of Sample's SAG claims concern matters that are outside the record. Accordingly, we cannot consider them on direct appeal. *See State v. McFarland,* 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

CONCLUSION

We affirm Sample's attempting to elude a pursuing police vehicle conviction, but we remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

JOHANSON, J.

MELNICK, J.