# FILE

IN CLERKS OFFICE
**SUPREME** COURT, STATE OF WASHINGTON

DATE **JUL 3 1 2014**



*Madsen, C.J.*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on July 31, 2014

*Ronald R. Carpenter*
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 88339-4 |
| Petitioner, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | Filed **JUL 3 1 2014** |
| RUSSELL DAVID HOMAN, | ) | |
| Respondent. | ) | |

WIGGINS, J.—Russell David Homan was convicted of child luring under Washington's luring statute, RCW 9A.40.090. On appeal, Homan argued that his conviction violated his Fourteenth Amendment[1] right to due process because the evidence was insufficient for conviction and that RCW 9A.40.090 is unconstitutionally overbroad in violation of the First Amendment.[2] The Court of Appeals reversed the conviction due to insufficiency of evidence.

The State timely appealed the reversal, and we granted review on the sufficiency of evidence issue. We decline to rule on the overbreadth issue because it would benefit

---

[1] U.S. CONST. amend XIV.

[2] U.S. CONST. amend. I.

from additional briefing and argument.[3] We hold that there was sufficient evidence to find that Homan lured a minor and remand the case to the Court of Appeals to decide the overbreadth issue.

## FACTS

Early one summer evening in the small rural community of Doty, Washington, 9-year-old C.C.N. was sent by his mother to the nearby store to buy milk. As he was walking along the road toward the general store, Homan, a 37-year-old man, rode past on a child's Superman BMX bicycle. As Homan rode by, he said, "Do you want some candy? I've got some at my house." C.C.N. said nothing and continued walking. Homan rode on without slowing, stopping, or looking back. There were two other children nearby, but Homan was closest to C.C.N. when he spoke.

C.C.N. did not know Homan and told his mother about the incident when he returned home. She drove him back into town where they saw Homan on his Superman BMX bicycle. C.C.N.'s mother called the sheriff's office, and Sergeant Robert Snaza spoke with Homan, who admitted riding his bicycle in the general store's vicinity.

---

[3] On December 26, 2013, we asked parties for additional briefing on the overbreadth issue, giving parties just two weeks over the holiday season to submit supplemental briefs. To make an informed decision on this complex First Amendment issue, we believe more briefing is necessary. Indeed, as the State points out, had we accepted review of the overbreadth issue initially, there might have been significant interest from several potential amici, such as Washington Defenders Association, Washington Association of Criminal Defense Attorneys, American Civil Liberties Union of Washington, Washington Association of Prosecuting Attorneys, and victim advocacy groups. Thus, the proper course of action here is to remand the issue because it was raised but not decided in the Court of Appeals. *See State v. Hudlow*, 99 Wn.2d 1, 659 P.2d 514 (1983) (since Allen Hudlow properly preserved the issue of his habitual criminal status for appeal, the issue deserves appellate court consideration; remanding the issue to Court of Appeals); *Courtright Cattle Co. v. Dolsen Co.*, 94 Wn.2d 645, 619 P.2d 344 (1980). Once the Court of Appeals issues its decision, if adverse to Homan, Homan is free to petition this court for review.

2

The State charged Homan with one count of luring. During his bench trial, Homan moved for dismissal based on insufficiency of evidence. The trial court denied his motion and found Homan guilty as charged. After denying Homan's motion for reconsideration, again based on a sufficiency challenge, the trial court imposed a standard range sentence of 120 days.

Homan timely appealed his conviction, arguing that the State produced insufficient evidence to support his conviction and that the luring statute, RCW 9A.40.090, is unconstitutionally overbroad. The Court of Appeals found the evidence insufficient to support Homan's conviction and reversed and remanded for dismissal with prejudice. *State v. Homan*, 172 Wn. App. 488, 493, 290 P.3d 1041 (2012). Accordingly, the appellate court did not reach the overbreadth issue. *Id.* The State timely appealed the reversal, and we granted review. *State v. Homan*, 177 Wn.2d 1022, 303 P.3d 1064 (2013).

## ANALYSIS

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). Specifically, following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Id.* We treat unchallenged findings of facts and findings

3

of fact supported by substantial evidence as verities on appeal. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990). We review challenges to a trial court's conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). These inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201; *accord State v. Kilburn*, 151 Wn.2d 36, 57-58, 84 P.3d 1215 (2004) (Owens, J., dissenting). Further, we must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *State v. Jackson*, 129 Wn. App. 95, 109, 117 P.3d 1182 (2005).

We hold that there was sufficient evidence that Homan lured a child under RCW 9A.40.090. The State has met its burden by proving all the necessary elements of luring beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 362-65, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

A person commits the crime of luring if the person:

> (1)(a) Orders, lures, or attempts to lure a minor or a person with a developmental disability into any area or structure that is obscured from or inaccessible to the public, or away from any area or structure constituting a bus terminal, airport terminal, or other transportation terminal, or into a motor vehicle;
>
> (b) Does not have the consent of the minor's parent or guardian or of the guardian of the person with a developmental disability; and
>
> (c) Is unknown to the child or developmentally disabled person.

(2) It is a defense to luring, which the defendant must prove by a preponderance of the evidence, that the defendant's actions were reasonable under the circumstances and the defendant did not have any intent to harm the health, safety, or welfare of the minor or the person with the developmental disability.

RCW 9A.40.090. Case law defines "lure" as an invitation accompanied by an enticement. *State v. Dana*, 84 Wn. App. 166, 176, 926 P.2d 344 (1996).

The parties do not dispute that Homan was a stranger to C.C.N. and that Homan did not have C.C.N.'s mother's consent to speak to C.C.N. Thus, the only issue is whether Homan attempted to lure C.C.N. into an area or structure obscured from or inaccessible to the public. The Court of Appeals held that the evidence failed to prove both an invitation and an enticement. We disagree and reverse the appellate court.

I. Sufficient Evidence of Invitation and Enticement

We hold that Homan's statement "[d]o you want some candy? I've got some at my house" is an invitation and an enticement, proof of which is sufficient to sustain a luring conviction. RCW 9A.40.090 does not require proof of unlawful purpose or intent.

The Court of Appeals incorrectly held that Homan's statements did not constitute an invitation because his words were only an offer of candy and a statement regarding its location. *Homan*, 172 Wn. App. at 492-93. But considering Homan's statements in context, a rational trier of fact could find beyond a reasonable doubt that Homan invited C.C.N. to his house to receive the offered candy. RCW 9A.40.090 does not require that a particular form of statement or address be used to lure. Homan's statements can easily be interpreted as an implied enticement and invitation, even though they are phrased as a question and an assertion of fact. *Accord id.* (Hunt, J., dissenting).

The Court of Appeals also reasoned that the statements were neither an invitation nor an enticement because Homan did not slow down or stop, or even look backward when he spoke. *Id.* at 492. But the statute does not require that there be conduct. A person commits the crime of luring if the person "[o]rders, lures, or attempts to lure . . . ." RCW 9A.40.090(1)(a). These acts may be committed with words alone. *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1347, 1588 (2002) ("lure" means to "ENTICE"; "order" means to "COMMAND" or "to give orders"). With his words, Homan attempted to lure C.C.N. when he told C.C.N. he had candy at his house and asked if C.C.N. wanted some. *Accord Homan*, 172 Wn. App. at 494-95 (Hunt, J., dissenting).

II. Sufficient Evidence That Homan Attempted To Lure a Minor "into" an Area Inaccessible to the Public

Homan also argues that the brief communication he had with C.C.N. does not prove an attempt to lure C.C.N. *inside* a house. At most, the evidence shows an invitation *to* a house, which does not prove luring, unless the house is on property obscured from or inaccessible to the public. We reject this argument.

RCW 9A.40.090 makes it unlawful for any person to invite a child "into any area or structure" away from the public. Thus, the statute does not require that the invitation be into an enclosed structure. Rather, it recognizes that some open-air "areas" are obscured from public access. Indeed, the provision was amended in 1995 to specifically address the act of luring minors into a secluded area, whether or not the area is a structure. H.B. REP. on S.B. 5039, 54th Leg., Reg. Sess. (Wash. 1995). And because there is no way to go "into" an area without going "to" that area and vice versa, we reject this distinction. By adding "area" to the statute, the legislature intended to

6

make criminal invitations to or into places inaccessible to the public. Requiring that Homan explicitly invite C.C.N. *into* his home ignores the plain purpose of the statute.

In any case, we hold that there was substantial evidence that Homan attempted to lure C.C.N. "into" a "structure" away from the public. RCW 9A.40.090(1)(a). A reasonable trier of fact could have found that an invitation "to a house" implied an invitation to enter the house to receive the offered candy. *See State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (all reasonable inferences found from evidence must be drawn in favor of state). This is unlike *State v. McReynolds*, 142 Wn. App. 941, 176 P.3d 616 (2008), where the defendant signaled for a minor to approach a truck. The Court of Appeals found that the gesture was "insufficient in and of itself to prove that Mr. McReynolds was trying to get L.S. into his truck" because McReynolds never said anything or made any gestures beyond the initial signaling. *Id.* at 948. By contrast, Homan, with his words, impliedly invited C.C.N. to his home. Homan told C.C.N. that he had candy at his house and asked C.C.N. if he wanted some. Thus, we should find that there was substantial evidence to find that Homan lured C.C.N. into an area or structure obscured from public view when he asked C.C.N. if he wanted candy located at Homan's house.[4]

III.    Sufficient Evidence That Homan Was Speaking to C.C.N.

Homan argues that the prosecution failed to prove that Homan's words were directed at C.C.N. rather than the other two children. We reject this argument because

---

[4] Alternatively, there is sufficient evidence that Homan attempted to lure C.C.N. "into" a secluded area given that Homan's mobile home is in a rural residential area with few surrounding homes.

7

a reasonable trier of fact could have found that based on the evidence, Homan was speaking to C.C.N.[5]

Homan rode a bicycle past C.C.N. while traveling in the same direction as C.C.N. While riding past C.C.N., Homan asked, "do you want some candy? I've got some at my house." C.C.N. told police that there were two other children in the vicinity when Homan rode by on his bicycle, but testified that he believed Homan was talking to him when Homan made the remarks about the candy.[6]

Homan does not offer any evidence that he knew the other children, or that he was speaking to them. The fact that he did not slow down when he made his remarks is not evidence that he was addressing the two unidentified children rather than C.C.N. Thus, we should accept the trial court's finding that Homan was speaking to C.C.N. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (reviewing court may not reweigh credibility of witnesses); *see also State v. Goodman,* 150 Wn.2d 774, 781, 83 P.2d 410 (2004) (on sufficiency of evidence challenge, reviewing court must draw reasonable inferences in favor of state).

---

[5] The dissent finds that there is insufficient evidence of an invitation, focusing on the fact that Homan rode past C.C.N. and never slowed or looked back. This reasoning fails to give proper deference to the trier of fact—in this case, the trial judge. The trial judge heard the testimony and found that Homan was, in fact, talking to C.C.N. That is a reasonable inference from the evidence, and we should not disturb it.

[6] In his original statement to Sergeant Snaza, C.C.N. indicated that the two children were about 10 feet behind him and it appeared as if Homan was "looking toward the middle" (between C.C.N. and the other children) when he spoke. At trial, C.C.N. clarified that it was probably more than 10 feet and that he believed Homan was talking to him. C.C.N. explained that he did not really understand how far 10 feet was when he made his original statement.

## CONCLUSION

We hold there was sufficient evidence to support Homan's luring conviction. We reverse the Court of Appeals and remand for a determination of whether RCW 9A.40.090 is unconstitutionally overbroad in violation of the First Amendment and for further proceedings consistent with this opinion.[7]

---

[7] We agree with the dissent that RCW 9A.40.090 has a broad legitimate sweep; the State has a substantial interest in protecting children and developmentally disabled persons and may validly proscribe luring or attempted luring of such persons into vehicles, areas, and structures for criminal purposes, although that attempt may involve speech. However, we take issue with portions of the dissent's First Amendment analysis. First, it is true that we generally presume that legislative enactments are constitutional and the party challenging a statute bears the burden of proving its unconstitutionality. Dissent at 3. However, in the free speech context, "'the State usually bears the burden of justifying a restriction on speech.'" *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011) (internal quotation marks omitted) (quoting *Voters Educ. Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 482, 166 P.3d 1174 (2007)). Second, the dissent dismisses concerns that the statute will be applied against protected speech, finding that there is little possibility that innocent parties (a student inviting peers to his or her house, a good Samaritan offering a ride, a bus driver, etc.) will be prosecuted. Dissent at 5. But selective enforcement does not cure overbreadth. Indeed, a danger inherent in overbroad statutes is that such statutes provide unbridled administrative and prosecutorial discretion that may result in selective prosecution based on certain views deemed objectionable by law enforcement. *Little v. City of Greenfield*, 575 F. Supp. 656, 662 (E.D. Wis. 1983); *see* Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 YALE L.J. 853, 868 n.94 (1991) (rationale underlying overbreadth doctrine advances two goals: to prevent a "chilling effect[]" on free speech and to prevent selective enforcement of a statute, which would target and discriminate against certain classes of people). Last, we question whether the affirmative defense protects the statute from an overbreadth challenge (dissent at 6) because it applies only after prosecution has begun. Accordingly, it alleviates neither the risk that protected speech will be "chilled" nor the danger of selective enforcement. *See also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002) (explaining that an affirmative defense does not cure overbreadth because the "speaker must himself prove, on pain of a felony conviction, that his conduct falls within the affirmative defense").

No. 88339-4

WE CONCUR.

_Wiggins, J._

_Madsen, C.J._

_J. M. Johnson, J. P.T._

_Stephens, J._

_González, J._

_Gordon McCloud, J._

_Fairhurst, J._

No. 88339-4

OWENS, J. (dissenting) — It is a crime to order or lure a child into a secluded area. This case hinges on what comments or conduct constitute "luring." As the majority indicates, luring requires an invitation and an enticement. In this case, Russell David Homan made an extremely inappropriate remark to a child as he rode by on his bicycle. But given that Homan did not slow down, stop, or even look back at the child after making the comment, his actions did not constitute an invitation. I disagree with the majority's conclusion that sufficient evidence supported Homan's conviction. I also disagree with the majority's decision to avoid Homan's constitutional challenge. This significant constitutional question has been fully briefed, and the court should take this opportunity to rule that the statute is not overbroad. I respectfully dissent.

## ANALYSIS

### 1. *Homan's Conviction Is Not Supported by Sufficient Evidence*

As the majority notes, a "lure" requires an invitation accompanied by an enticement. Majority at 5 (citing *State v. Dana*, 84 Wn. App. 166, 176, 926 P.2d 344 (1996). When viewed as a whole, Homan's actions did not constitute an invitation into a nonpublic structure or area. His words, when viewed in isolation, could be construed as an offer of candy. However, he spoke those words while riding past C.C.N. on his bicycle—never slowing, stopping, or even looking back to indicate that his words were an invitation to follow him to his house. Thus, the evidence is insufficient to show that he attempted to lure C.C.N. because it does not show an actual invitation.

The majority is correct that the statute does not *require* conduct to elevate words to the level of an invitation. Majority at 6. But it does require an invitation. Thus, if a defendant's conduct indicates that the words are not an invitation, then there is insufficient evidence to support a luring conviction. Homan's actions indicate that his words did not mean that he was inviting C.C.N. to his house when Homan spoke while riding past C.C.N and never slowed down or looked back. The interaction must be viewed as a whole, and the majority improperly focuses on his words in isolation to find sufficient evidence. Given all the circumstances, there was insufficient evidence to support a luring conviction and therefore I dissent on this issue.

## 2. *We Should Consider the Constitutional Challenge and Hold That the Luring Statute Is Not Unconstitutionally Overbroad*

The majority chooses to remand this case to the Court of Appeals to determine whether the luring statute violates the constitutional protection against overbroad criminal statutes. It chooses this option even though both parties have fully briefed this significant question of law. Though I would hold that Homan's conviction is not supported by sufficient evidence, I separately disagree with the majority's choice to remand this important constitutional issue. I would hold that the luring statute is constitutional.

Statutes are presumed constitutional, and the party challenging a particular statute has the burden to prove that it is unconstitutional. *City of Bellevue v. Lee*, 166 Wn.2d 581, 585, 210 P.3d 1011 (2009). The United States Supreme Court has articulated the rule for overbreadth challenges as follows:

> The First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges. The showing that a law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep," suffices to invalidate *all* enforcement of that law, "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression."

*Virginia v. Hicks*, 539 U.S. 113, 118-19, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003) (citations omitted) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 615, 93 S. Ct.

2908, 37 L. Ed. 2d 830 (1973)).[1] Finding a statute to be overbroad is "strong medicine" and should be used "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613.

The concern is "chilling" otherwise constitutionally protected speech, "especially when the overbroad statute imposes criminal sanctions." *Hicks*, 539 U.S. at 119. "[H]owever, there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law." *Id.* That is particularly true for laws that reflect "'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'" *Id.* (quoting *Broadrick*, 413 U.S. at 615). That is why the amount of potentially protected speech affected by the law must be "'judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 118-19 (quoting *Broadrick*, 413 U.S. at 615). "The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Id.* at 122 (alteration in original) (quoting *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988)). Importantly, "there must be a realistic danger that the statute itself will significantly compromise recognized" free speech.

---

[1] Whether challenged under the federal or state constitution, the analysis is the same. As this court has said, "[I]n deciding whether [a law] suffers from overbreadth under article I, section 5, our analytical approach aligns with the approach taken under the First Amendment." *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 801, 231 P.3d 166 (2010) (citing WASH. CONST. art. I, § 5; U.S. CONST. amend. I).

*Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S. Ct.

2118, 80 L. Ed. 2d 772 (1984).

The plainly legitimate sweep of RCW 9A.40.090(1) outweighs the concern that

legitimate speech may be encroached by its enforcement. Children and the

developmentally disabled are the most vulnerable members of our society, and the

luring statute protects them from some of the most evil types of criminal activity, such

as child abduction. The State has a very strong interest in protecting its most

vulnerable from such attacks. That strong interest must be balanced against the

concern that protected speech will be punished or chilled under the law.

Homan does not meaningfully engage in this necessary balancing. Rather, he

offers several absurd examples of potentially affected speech while ignoring the

requirement that there must be a "realistic danger" that the statute will curtail

protected speech. *Id.* For example, students will not fear a luring prosecution when

inviting other students over to talk about school. *See* Resp't's Second Suppl. Br. at 8.

Similarly, an adult would likely drive a critically injured child to the hospital without

concern of a luring prosecution. *See id.* And school bus drivers need not worry that

prosecutors will bring luring charges when the driver tells students to "hop in" at a

bus stop. *See id.* The statute is not designed to target these innocent interactions.

These unrealistic concerns are outweighed by the State's strong interest in protecting

its most vulnerable citizens.

Additionally, the affirmative defense portion of the statute protects individuals from prosecution for innocent communications with children and the developmentally disabled. It is an affirmative defense to luring if the defendant shows that his or her "actions were reasonable under the circumstances and the defendant did not have any intent to harm the health, safety, or welfare of the minor or the person with the developmental disability." RCW 9A.40.090(2). Whether or not this section protects the statute from an overbreadth challenge on its own, it weighs on the side of validity because it significantly limits the realistic danger that the luring statute will significantly compromise recognized free speech. *Members of City Council*, 466 U.S. at 801. Realistically, it is doubtful that the statute *significantly* compromises free speech. The realities of its application in innocent contexts taken with the affirmative defense clause sufficiently protects free speech.

## CONCLUSION

I would hold that sufficient evidence does not support Homan's conviction for luring because his conduct indicated that he did not invite C.C.N. into a nonpublic area or structure. I also disagree with the majority's decision to remand an important question of constitutional law that has been fully briefed to this court. We should consider the overbreadth challenge to the luring statute and hold that the statute is constitutional. I respectfully dissent.

*State v. Homan*
88339-4
Owens, J., Dissenting

7