FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 9:08

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45678-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| NICHOLE DIANE BARKER, | |
| Appellant. | |

MAXA, J. — Nichole Barker appeals from her conviction for felony violation of a domestic violence court order arguing that she received ineffective assistance of counsel and that the State failed to present sufficient evidence to establish that she violated a no-contact order.[1] We disagree and affirm her conviction.

## FACTS

On May 28, 2013, July 6, 2013, and July 23, 2013, the Pierce County District Court issued domestic violence no-contact orders prohibiting Barker from having any contact with her mother, Shari Barker. Nichole Barker knew of those orders. Shari[2] is the caregiver for Barker's two children.

---

[1] A commissioner of this court initially considered Barker's appeal as a motion on the merits under RAP 18.14 and then transferred it to a panel of judges.

[2] In the interest of clarity, we refer to Barker's relatives by their first names. No disrespect is intended.

On August 16, 2013, Barker went to the home of her sister, Danielle Barker, to pick up some belongings. When Danielle's son let her in the house, Barker noticed that her own children were there. Shari had brought them to Danielle's to play with Danielle's children. Barker went to see her children and saw that Shari was with them in the backyard. Barker said she did not know Shari was going to be at Danielle's. Barker told Shari that she would leave but asked if she could hug her children before she left. Shari agreed. Barker hugged her children and went back into the house.

After about 20 minutes, Barker and Danielle got into an argument, and Danielle asked Barker to leave. When Barker refused to leave, Danielle texted Shari and asked her to call 911. Police arrived and arrested Barker for violation of the no-contact orders.

Because she had two prior convictions for violating no-contact orders, to which she stipulated, the State charged Barker with felony violation of the no-contact order as to Shari. Barker, Shari, and Danielle testified as described above. During his closing argument, the prosecutor argued as follows:

> Finally, in [defense counsel's] opening he told you that there was contact, but it was not willful or intentional. There is no requirement there, anywhere in the WPIC's, anywhere in your jury instructions, that it be willful or intentional. Did she knowingly have contact? When she got to the house, did she go there with intent to or with knowledge to try to contact her mom? Probably not. But the moment she sees her in the backyard, from that point forward, she knows her mom is there and she knows she's having contact and she would not leave.

Report of Proceedings (RP) (Oct. 23, 2013) at 139. Barker's counsel did not object to this argument.

Barker's counsel argued that Barker had not intentionally or deliberately violated the no-contact orders as to Shari because Barker did not know Shari was going to be at Danielle's house and Barker went back into the house when she noticed that Shari was in the backyard.

2

In his rebuttal, the prosecutor argued as follows:

> First, I want to clear up, there's no requirement -- this may sound like I'm splitting hairs -- there's no requirement that she intentionally or willfully -- I'm sorry -- intentionally or deliberately contacted her. The standard is did she knowingly contact Shari Barker?

RP (Oct. 23, 2013) at 150. Barker's counsel did not object to this argument.

The jury convicted Barker as charged. She appeals.

## ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Barker argues that the State failed to present sufficient evidence that she knowingly contacted Shari. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In evaluating a sufficiency of the evidence claim, we assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Id.*

Several statutes authorize no-contact orders; the no-contact order against Barker was issued under chapter 10.99 RCW . RCW 10.99.050(2)(a) provides that a "[w]illful violation of a court order . . . is punishable under RCW 26.50.110." Under RCW 9A.08.010(d)(4), "[a] requirement that an offense be committed wilfully [sic] is satisfied if a person acts knowingly with respect to the material elements of the offense." Therefore, to convict Barker of violating a domestic violence protection order under RCW 26.50.110(1)(a)(i), the State had to prove beyond a

3

reasonable doubt that she knew of the order and *knowingly* violated its provision prohibiting contact with a protected party. *State v. Sisemore*, 114 Wn. App. 75, 77-78, 55 P.3d 1178 (2002).

A person acts knowingly if "he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense." RCW 9A.08.010(1)(b)(i). On the other hand, a person does not knowingly violate a contact prohibition in a situation in which the defendant "accidentally or inadvertently contacted [the protected party] but immediately broke it off." *Sisemore*, 114 Wn. App. at 78.

Taken in the light most favorable to the State, the evidence showed that although Barker's initial contact with Shari was inadvertent, she did not immediately break it off. Instead, the evidence established that upon discovering Shari in Danielle's back yard, Barker did not leave. She stayed, hugged her children, and went into the house where she remained for 20 minutes. While her initial contact with Shari may not have been a violation of the no-contact orders, a rational trier of fact could find beyond a reasonable doubt that Barker's remaining at Danielle's house after discovering Shari's presence was a knowing violation of the no-contact orders. The State presented sufficient evidence to support Barker's conviction.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Barker argues that she received ineffective assistance of counsel when her trial counsel did not object to the prosecutor's statement of the law during closing arguments. We disagree.

To prevail on his ineffective assistance of counsel claim, Barker must show that (1) her attorney's performance was deficient, and (2) that deficiency was prejudicial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. Such deficient performance is prejudicial if there is a reasonable probability that the result of the proceedings would have been different in its

absence. *Id.* at 34. Reasonable probability in this context means a probability sufficient to undermine confidence in the outcome. *Id.*

Barker contends that in arguing that the State did not have the burden of proving that she had intentional or deliberate contact with Shari, the prosecutor misstated the law. But the prosecutor did not misstate the law. As noted above, to convict Barker of violating a domestic violence protection order under RCW 26.50.110(1)(a)(i), the State had to prove only that Barker *knowingly* contacted Shari. *Sisemore*, 114 Wn. App. at 78; *see also* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.51.01-.02, at 639-40 (3d ed. 2008). Neither RCW 26.50.110 nor RCW 10.99.050(2)(a) expressly require intentional contact. Barker does not point us to any statutory authority that imposes a requirement that a party must intentionally violate the no-contact order to violate RCW 26.50.110(1)(a).

Instead, Barker cites to *State v. Clowes*, 104 Wn. App. 935, 944-45, 18 P.3d 596 (2001), and *Sisemore*, 114 Wn. App. at 78, for her contention that the contact must be intentional. Because her defense was that her contact with Shari was not intentional, Barker contends that her trial counsel's failure to object to the State's argument was prejudicial.

Barker's reliance on *Clowes* and *Sisemore* is misplaced. Barker relies on a statement in *Clowes* that "the instruction is inadequate because it does not tell the jury that not only must the defendant know of the no-contact order; he must also have intended the contact." 104 Wn. App. at 944-45. However, in *Clowes* the court clearly states that the elements of a violation of a no-contact order are "when [a defendant] willfully has contact with another knowing that a no-contact order exists and prohibits the contact." *Id.* at 944. Moreover, the court recognized, as we do above, that proof that "a person acted 'knowingly' is proof that they acted 'willfully.' " *Id.* at

944. And the court in *Sisemore* expressly held that the State must prove only that the defendant acted *knowingly*. 114 Wn. App. at 78.

Neither *Clowes* nor *Sisemore* held that the State must prove that the defendant *intended* to violate the no-contact order when he or she contacted the protected party. 104 Wn. App. at 944; 114 Wn. App. at 78. Therefore, the prosecutor did not misstate the State's burden during closing argument and the trial court would have overruled any objection.

We hold that Barker's counsel did not engage in deficient performance in not objecting and that any failure to object did not prejudice Barker because the objection would have been overruled. Accordingly, Barker's ineffective assistance of counsel argument fails.

We affirm Barker's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

BJORGEN, A.C.J.

MELNICK, J.