IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36657-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRADLEIGH A. HINES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Bradleigh Hines appeals his conviction following a bench trial for felony failure to register as a sex offender, challenging the sufficiency of the State's evidence. He also challenges the judgment's provision requiring him to pay interest on nonrestitutionary legal financial obligations (LFOs). We affirm the conviction but remand with directions to strike the interest provision from his judgment and sentence.

No. 36657-0-III
*State v. Hines*

FACTS AND PROCEDURAL BACKGROUND

The following background is substantially based on the unchallenged findings of fact following Mr. Hines's bench trial. Unchallenged findings are verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

In December 2004, Mr. Hines was convicted of third degree rape of a child, which required him to register as a sex offender. Thereafter, and through March 2015, he had four convictions for failing to register. In the months leading up to the offenses charged in this case, Mr. Hines was serving community custody for one of those convictions and was registered as a sex offender with the Asotin County Sheriff's Office.

Between July and November 2017, Mr. Hines's community custody officer (CCO), Amanda Renzelman, allowed him to live in Lewiston, Idaho, with Cassie Dahlman, the mother of his children, while he pursued a transfer of his supervision to Idaho. Mr. Hines registered Ms. Dahlman's Lewiston address as his residence with both the Asotin and Nez Perce (Idaho) County sheriffs' offices during this time frame. After a home visit and a less-than-pleasant interaction with the Idaho CCO who would supervise him following any transfer, Mr. Hines abandoned his transfer request and returned to Asotin County.

Following a brief period of registration in Asotin County as a transient, on November 28, 2017, Mr. Hines registered a camp trailer located at 2524 6th Avenue in

2

Clarkston as his residence.  The property and trailer belonged to Adam Schirm.

About a month later, on December 20, CCOs Kevin Vogeler and Kyle Helm traveled to the Clarkston camp trailer to verify Mr. Hines's presence.  Efforts to find him there in the morning and the evening were unsuccessful.  They sent a text message to Mr. Hines asking him to contact CCO Renzelman.  Mr. Hines did not respond.

A month later, on January 18, CCOs Renzelman and Vogeler returned to the Clarkston camp trailer once in the morning and again in the afternoon.  It did not appear anyone was living there, because the trailer door was ajar and bags of garbage were piled in front of it, obstructing the path into the trailer.  CCO Renzelman left her business card and a note asking Mr. Hines to contact the Department of Corrections (DOC) no later than January 22 at 8:00 a.m.  CCO Renzelman also attempted to call Mr. Hines and sent a text message asking for an update about his residence.

Mr. Hines did not report as instructed on January 22, and did not reply to the calls and text messages.  The next day, CCO Renzelman sent another text message and told Mr. Hines to report by 8:00 a.m. on January 24 to avoid issuance of a warrant.  Mr. Hines did not respond or report, and a warrant was issued.

A week later, Sergeant Lucas Martin of the Nez Perce County Sheriff's Office found Mr. Hines at Ms. Dahlman's home in Lewiston.  Mr. Hines eventually admitted he

had been staying there since Christmas because his car broke down, impeding his return to Clarkston.[1]

The State charged Mr. Hines with felony failure to register as a sex offender (third or subsequent conviction) and escape from community custody.

When the case later proceeded to a one-day bench trial, the State's witnesses were Mr. Schirm and the law enforcement officers involved in Mr. Hines's supervision and efforts to locate him in December 2017 and January 2018. Witnesses for the defense were Mr. Hines and Kaitlyn Flerchinger, who claimed to have been living with Mr. Hines during the December/January time frame.

When called as a State witness, Mr. Schirm testified he had not seen Mr. Hines at the trailer in Clarkston since around New Years of 2018. But he denied ever telling Mr. Hines he had to leave.[2] When cross-examined, he testified that he worked nights and

---

[1] As the Asotin County trial court was aware, Clarkston and Lewiston are sister cities, with both bordering state lines defined by the Snake River.

[2] He was asked twice by the prosecutor:

Q    All right. Was there—did you ever at any time talk to him about not—not being able to stay there any longer?
A    No. He needed like a brake booster for his car or something like that and I gave him that and a tire and that's about all I really ever talked to him.
Q    All right.
A    No, we never told him he had to leave.
. . . .
Q    . . . Do you recall telling the officer that you found—that you stopped letting him stay there because you found out he was convicted and he'd have to register?

4

slept days, so Mr. Hines might have been at the property unbeknownst to him, and "I wasn't really keeping tabs on him."  Report of Proceedings (RP) at 52.

Mr. Schirm's testimony was followed by that of Asotin County Sheriff's Deputy Jesse Carpenter.  Deputy Carpenter was informed of Mr. Hines's DOC arrest warrant on January 24 and was sent to do a verification check at the camp trailer.  Mr. Hines was not present, but the deputy spoke with Mr. Schirm.  Over a defense objection that it was hearsay, Deputy Carpenter testified that Mr. Schirm told him Mr. Hines no longer lived there.  He testified that Mr. Schirm told him he became concerned that Mr. Hines was a registered sex offender and had "told Mr. Hines to move along."  RP at 56.  Responding to the hearsay objection, the prosecutor said the testimony was offered as impeachment. The objection was overruled on that basis.

In the defense case, Mr. Hines and Ms. Flerchinger testified that during December 2017 and January 2018 they spent most nights in the trailer in Clarkston.  Mr. Hines testified he did not report to DOC or make his whereabouts known to CCO Renzelman because he believed he likely had a warrant for missing his appointments and wanted to spend the holidays with his children and Ms. Dahlman.

---

A      No.  No, we never told him he had to leave.
Report of Proceedings at 50.

5

At the conclusion of the evidence, the trial court found Mr. Hines guilty of both charges, telling him the evidence it found "most compelling"

> is your statement to that Idaho deputy when you were asked directly about your residential status at the place that you were found and you responded to him that you had been staying there and that you couldn't get back to Washington. So to come back in today and say I was back and forth and back and forth and it just so happened that nobody ever caught up with me at the trailer when I was back there . . . lacks credibility in the Court's eyes.

RP at 133. The court added that "[a]ll the other evidence that was presented through the State's witnesses was consistent with an absence of residency at that stated address." *Id.*

The trial court later entered written findings and conclusions, in which it concluded that "[n]ot later than January 1, 2018, the Defendant ceased residing at 2524 6th Avenue, Clarkston, Washington, and began residing at 628 Burrell Avenue Space 10, Lewiston, Idaho." Clerk's Papers (CP) at 51. It sentenced Mr. Hines to 50 months of confinement, and imposed LFOs that "shall bear interest from the date of the Judgment until payment in full, at the rate applicable to civil judgments." CP at 58.

Mr. Hines appeals.

## ANALYSIS

I. SUFFICIENT EVIDENCE SUPPORTS THE CONVICTION FOR FAILURE TO REGISTER AS A SEX OFFENDER

Mr. Hines challenges two of the trial court's findings of fact and argues the remaining findings do not support the trial court's conclusion that he is guilty of failure to

register as a sex offender.  He challenges one of the statements in the court's finding 7.

The finding states in part (the challenged statement is highlighted):

> On January 18, 2017, CCOs Renzelman and Vogeler attempted to contact the Defendant at the camp trial at the 6th Avenue address.  The officers attempted contact in the morning and again in the afternoon. . . .  *During the afternoon attempt, officers contacted Adam Schirm who stated that the Defendant was no longer living there.*

CP at 49-50 (emphasis added).  Mr. Hines argues that statements made by Mr. Schirm to officers were admitted only for impeachment, not as substantive evidence.

He also challenges language in finding 11,[3] which states:

> During his contact with Sgt. Martin on January 31, 2018, the Defendant initially denied that he was living at that location, *but then admitted, on audio recording, that he had been living at that location since Christmas.*  The Defendant offered the excuse that his car had broken down.  He further stated that he had not been back to the Clarkston residence as a result of this.

CP at 50 (emphasis added).  He argues that when interviewed by Sergeant Martin, he said he had been "staying," not "living," at the Lewiston address.

In evaluating a claim of insufficient evidence, we "view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt."  *Homan*, 181 Wn. 2d

---

[3] The trial court's first 11 findings of fact are correctly and sequentially numbered, but errors occur thereafter and include a second finding 11.  Mr. Hines's assignment of error is to the first finding 11.

at 105. Following a bench trial, appellate review "is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Id.* at 105-06. "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id.* at 106. Appellate courts "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Id.* The trial court's conclusions of law are reviewed de novo. *Id.*

Under RCW 9A.44.132(1), "[a] person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130." Requirements of RCW 9A.44.130 include notifying the county sheriff within three days of establishing a residence after moving to a new county or ceasing to have a fixed residence. RCW 9A.44.130(5)(b), (6)(a). Mr. Hines concedes that he is a convicted sex offender required to maintain registration and that he did not register with the Asotin County Sheriff's Office after January 1, 2018. The only disputed issue was whether he had established a new residence or ceased to have a fixed address, triggering an obligation to register the change. It was Mr. Hines's position at trial that the Clarkston camp trailer continued to be his fixed residence throughout the charging period of January 1 through 31, 2018.

Mr. Hines relies on two decisions of this court to argue that "the dispositive question in determining where a person resides is whether the person intends to return." Br. of Appellant at 10 (citing *State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999) and *State v. Drake*, 149 Wn. App. 88, 94-95, 201 P.3d 1093 (2009)).  But both decisions predate the legislature's adoption in 2011 of statutory definitions of "fixed residence" and "lacks a fixed residence."  LAWS OF 2011, ch. 337, § 2.  "Fixed residence" is defined to mean

> a building that a person lawfully and habitually uses as living quarters a majority of the week.  Uses as living quarters means to conduct activities consistent with the common understanding of residing, such as sleeping; eating; keeping personal belongings; receiving mail; and paying utilities, rent, or mortgage.

RCW 9A.44.128(5).

*Finding 7*

Responding to Mr. Hines's challenge to the statement in finding 7 that "officers contacted Adam Schirm who stated that the Defendant was no longer living there," CP at 49-50, (meaning in the Clarkston camp trailer), the State argues that Mr. Hines is conflating testimony of Deputy Carpenter, to which defense counsel did object, with testimony of other witnesses, to which no objection was made.  The State points out that finding 7 explicitly speaks to what CCOs Renzelman and Vogeler were told on the afternoon of January 18.  No objection was made when the CCOs testified to what they were told on the 18th.

Asked about her afternoon visit that day, CCO Renzelman testified as follows:

> Q  And did you make a subsequent contact that day or attempt to contact?
>
> A  We did.  We returned later that afternoon and spoke with an individual that identified himself as Adam, who said that Brad had moved out on New Year's and he had not seen him again since.

RP at 67.  Questioned about the same afternoon visit, CCO Vogeler testified:

> Q  And you—did you attempt to conduct a home contact with Mr. Hines?
>
> A  Yes.
>
> Q  And that—where was that?
>
> A  It was at that same location.  We ended up seeing a person that was doing some sort of groundwork or yardwork and talked with that individual and he told us that he didn't live there anymore; that he had actually moved out.

RP at 80.

In reply, Mr. Hines argues that this, too, was hearsay, and it was ineffective assistance of counsel for his trial lawyer not to make the same hearsay objection she successfully made to testimony from Deputy Carpenter.  While Mr. Hines makes a tenable claim of ineffective assistance, we will not consider an argument made for the first time in a reply brief to which the State has no opportunity to respond.  *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

10

*Finding 11*

Sergeant Martin of the Nez Perce County Sheriff's Office was the State's first witness and testified that when he located Mr. Hines on January 31, he questioned Mr. Hines before and after taking him into custody. The in-custody questioning took place inside the sergeant's patrol car, and was recorded. Mr. Hines argues that finding 11 is unsupported by evidence because he admitted to Sergeant Martin only that he had been "staying" with Ms. Dahlman in Lewiston, not "living" there.

According to Sergeant Martin's testimony and the recording, which was played for the court,[4] the words "stay" and "live" were both used throughout the interview. The State's response brief identifies portions of Sergeant Martin's testimony and the recording that support a finding that Mr. Hines admitted he had been living at the Lewiston location at Christmas. Br. of Resp't at 12-14.

The simpler response to the challenge to finding 11, however, is that whether Mr. Hines was living or staying in Lewiston, there was sufficient evidence that the Clarkston camp trailer was no longer his fixed residence. Mr. Hines does not challenge the court's finding that he had not been back to the Clarkston residence as a result of car trouble that began around Christmas. Viewing the evidence in the light most favorable to the State,

---

[4] The report of proceedings includes a transcription of the playing of the recording, but it is not entirely accurate. The recording, exhibit P6, is the more reliable evidence.

both direct evidence (the unobjected-to statements made to CCOs Renzelman and Vogeler by a person the trial court could reasonably infer was Mr. Schirm) and circumstantial evidence (Mr. Hines's absence during verification visits, his failure to respond to physical and electronic messages, visual indications the camper was not being lived in, and Mr. Hines's admission that he had been staying in Lewiston since Christmas) support the conclusion that the camp trailer in Clarkston was no longer a place he "habitually use[d] as living quarters a majority of the week." RCW 9A.44.128(5). Because his registered address ceased to be his fixed residence, Mr. Hines was required, but failed, to notify the Asotin County's Sheriff's Office.[5]

II. THE STATE CONCEDES THAT MR. HINES'S NONRESTITUTIONARY LFOS SHOULD NOT BEAR INTEREST

Mr. Hines's remaining assignment of error is to a provision of his judgment and sentence requiring him to pay interest on his LFOs notwithstanding legislation effective June 7, 2018, that prohibits interest on nonrestitutionary LFOs. *See* LAWS OF 2018, ch. 269, § 1(1). Mr. Hines was sentenced in February 2019, and has no restitution obligation.

The State concedes error and does not object if we address it. We exercise our discretion to correct the error.

---

[5] This court recently held that an individual who failed to use his living quarters for a majority of one week was not guilty of failure to register where he habitually used his registered fixed residence as his living quarters and was only occasionally away. *State v. Cathers*, No. 36885-8-III, (Wash. Ct. App. Apr. 14, 2020), https://www.courts.wa .gov /opinions/pdf/368858_pub.pdf. That is not the case here.

No. 36657-0-III
*State v. Hines*

The conviction is affirmed. We remand with directions to make a ministerial correction striking the interest provision.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.

13