# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56480-7-II |
| Respondent, | |
| v. | |
| DON OEUN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. – Don Oeun was charged and convicted "as a principal or as an accomplice" with unlawful possession of a controlled substance with intent to deliver and unlawful delivery of a controlled substance. Clerk's Papers (CP) at 8. He argues the evidence was insufficient to prove that he knowingly aided Jesse Ramirez in possessing a controlled substance with the intent to deliver and then deliver that controlled substance. We disagree and affirm both convictions.

FACTS

The Thurston County Narcotics Task Force (TNT) arranged a "buy-bust operation" in a parking lot in which Jesse Gamez was to buy a controlled substance from Ramirez. Verbatim Report of Proceedings (VRP) at 124. Gamez was provided "buy funds" for the transaction. *Id.* at 128. TNT also searched Gamez to ensure he did not have any controlled substances on him prior

to meeting with Ramirez. Gamez was in TNT's custody up until the meeting, and TNT observed Gamez as he left the officers' presence and entered a car to meet with Ramirez.

Appellant Don Oeun drove Ramirez to the meeting with Gamez. When Oeun and Ramirez pulled up, Gamez got into the back seat of the car. "Immediately after [Gamez] got in the car, the car started to drive away." *Id.* at 215. The car drove from its initial spot by a bank towards a bowling alley, and then it went "kind of back to the back side of the Grocery Outlet store, did a little U-turn, [and] came back." *Id.* The car then parked in the same spot where Gamez was picked up.

TNT observed the vehicle driving around the parking lot. When Gamez exited the vehicle, TNT moved in to arrest Oeun and Ramirez. As Ramirez, who was in the front passenger seat, got out of the vehicle, "a large baggie of methamphetamine and US currency fell" off his lap. *Id.* at 132. There was approximately half a pound (208 grams) of methamphetamine in the bag. Gamez was also immediately taken into custody and searched. An ounce of methamphetamine was found on Gamez that had not been present prior to him entering the vehicle.

TNT then searched the vehicle, which Oeun owned. In the center console of the vehicle, law enforcement found the "buy funds" Gamez had been provided for the transaction. *Id.* at 152. In a pocket on the driver's door, there was "a zip-lock sandwich baggie" with "[a] white crystalline substance and a brown tar-like substance." *Id.* at 147-48.

Oeun was charged, "as a principal or as an accomplice," with unlawful possession of a controlled substance with intent to deliver and unlawful delivery of a controlled substance. CP at 8. At trial, detectives and a supervisor with TNT testified consistent with the events above. The supervisor also testified that generally illegal drug transactions occur in public areas and, on

average, are less than 10 minutes. Furthermore, according to the supervisor, it was not uncommon for dealers to have someone to drive them to as many transactions as possible, so the dealer can focus on the transactions. And the vehicles would not be in the dealer's name to better protect the dealer. The supervisor also explained that methamphetamine was "a crystal-like substance" that had a "hard or granular" appearance and that heroin can be a "tar-like, brown tar substance." VRP at 74. A TNT detective also testified that even one ounce of a controlled substance is considered "a dealer amount." *Id.* at 187.

The State argued in closing that Oeun knowingly assisted Ramirez in his drug trafficking activity, both by his actions in driving Ramirez to the transaction with Gamez (the delivery count) and by driving Ramirez around while they both possessed a large quantity of illegal drugs so that Ramirez could conduct his drug transactions (the possession with intent to deliver charge).

The jury found Oeun guilty on both charges. Oeun appeals.

## DISCUSSION

Oeun argues that there were insufficient evidence for both convictions because there was no evidence that his actions aided Ramirez, and that even if his actions did aid Ramirez, Oeun did not act knowingly.

We conclude that the evidence is sufficient to sustain both convictions.

A. LEGAL PRINCIPLES

*1. Sufficiency of the Evidence*

The State has the burden of proving every element of a crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). When reviewing a sufficiency of evidence challenge, we ask "whether any rational fact finder could have found the elements of the

crime beyond a reasonable doubt." *Id.* at 105. When a defendant raises a sufficiency of the evidence challenge, they admit the truth of the State's evidence and all reasonable inferences arising from that evidence. *Id.* at 106. Direct and circumstantial evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). Sufficiency of the evidence challenges are reviewed de novo. *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019).

*2. RCW 69.50.401 and RCW 9A.08.020*

RCW 69.50.401[1] provides that it is unlawful for an individual to deliver or possess with intent to deliver a controlled substance, except as authorized by chapter 69.50 RCW.

Under RCW 9A.08.020(3)(a)(ii), an individual is considered an accomplice if that individual aids another person in the commission of a crime "[w]ith knowledge" that they are promoting or facilitating the commission of the crime. The State can use circumstantial evidence to prove knowledge. *State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015).*

B. ANALYSIS

Oeun argues that there was insufficient evidence because he was merely present when the crimes occurred.

Here, Oeun was not merely present when the crimes occurred, but actively aided Ramirez. Oeun facilitated both of the underlying crimes by driving Ramirez and the controlled substance to the meeting and allowing the transaction to take place in the vehicle Oeun owned. Oeun also drove Ramirez and Gamez behind a building for the transaction. Finally, Oeun allowed Ramirez to store the money for the transaction in Oeun's vehicle. We conclude this evidence was sufficient to prove

---

[1] RCW 69.50.401 was amended in 2022. Because these amendments have no impact on our analysis, we cite to the current version of the statute. *See* LAWS OF 2022, ch. 16, § 84.

that Oeun facilitated both the possession with intent to deliver conviction as well as the delivery conviction.

We conclude that there was also sufficient evidence to establish that Oeun knew he was facilitating both of the underlying crimes. Oeun contends that merely being present and driving Ramirez to Gamez is insufficient to prove that Oeun knew he was aiding Ramirez to commit the underlying crimes. Had the evidence merely established that Oeun drove Ramirez to meet with Gamez, it is likely that we would agree the evidence was insufficient.

However, here, Oeun also picked up Gamez and "[i]mmediately" drove behind a grocery store in the same parking lot and then returned Gamez to the pick up spot, indicating Oeun knew of Ramirez's plans prior to meeting with Gamez. VRP at 215. We conclude these actions along with the large amount of methamphetamine and currency on Ramirez's lap and what appeared to be controlled substances in the driver door, a reasonable juror could find beyond a reasonable doubt that Oeun knew he was facilitating the underlying crimes.

## CONCLUSION

The evidence is sufficient to support Oeun's convictions. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 54680-7-II

CRUSER, A.C.J.

We concur:

MAXA, J.

VELJACIC, J.

6