IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Detention of | No. 85921-8-I |
|---|---|
| M.Y. | DIVISION ONE |
| | UNPUBLISHED OPINION |

SMITH, C.J. — M.Y. was admitted to Western State Hospital in August 2022, following the dismissal of a non-violent criminal offense. Upon his admission, Dr. Vanessa Kieu and Dr. Carola Rong petitioned for further involuntary treatment. As a basis for the petition, Dr. Kieu testified that she diagnosed M.Y. with unspecified schizophrenia spectrum and other psychotic disorders. Dr. Kieu also stated that M.Y. lacked insight and judgment, which put him at risk of serious physical harm. M.Y. testified that he had temporary housing accessible, would live with his parents if the shelter was unavailable and agreed to seek mental health treatment in the community. The court nonetheless found M.Y. was gravely disabled and ordered him detained for 90 days of less restrictive involuntary treatment. Because of delays in permanent housing options, M.Y. stayed at Western State Hospital. On appeal, M.Y. contends that the evidence was insufficient to find him gravely disabled. We agree and vacate the trial court's 90-day involuntary commitment order.

FACTS

In August 2022, M.Y. was admitted to Western State Hospital following the dismissal of a non-violent criminal charge.  The underlying incident arose when a citizen called law enforcement after seeing a man leave the Bothell Home Depot store, shouting and talking to himself about carrying a bomb.  The citizen provided a description of the man and law enforcement eventually arrested M.Y.  Although it had been over an hour since the original 911 call and he was four miles away from the Home Depot, M.Y. roughly matched the citizen's description and seemed disheveled and incoherent.  The State charged M.Y. with the non-violent felony of threat to bomb or injure property.

The court found M.Y. incompetent to stand trial.  The court later found that, because of the delay in competency restoration, M.Y. was unlikely to regain competency in a reasonable period of time.  The State conceded the delay, and several months after M.Y.'s arrest, the court dismissed the charge without prejudice.  The court then referred M.Y. for a civil commitment evaluation.  The court committed M.Y. to Western State for 120 hours to perform that evaluation.

After the five day involuntary detention, Dr. Vanessa Kieu and Dr. Carola Rong petitioned to detain M.Y. for up to 180 days of further involuntary treatment under chapter 71.05 RCW.  The doctors provided two separate grounds for the petition.  First, they alleged that M.Y. had committed a felony and that he presented a substantial likelihood of repeating the act because of a behavioral health disorder.  And second, the doctors alleged that M.Y. was gravely disabled because of a behavioral health disorder.

2

In September 2022, at a hearing before a court commissioner, M.Y. sought to represent himself pro se but was denied on the basis that his request was not voluntary, knowing, and intelligent.

The commitment hearing centered on the doctors' testimony. As to the first ground in the petition, the commissioner found that the facility failed to meet its burden of proof by clear, cogent, and convincing evidence that M.Y. had committed acts which amounted to a felony and presented a substantial likelihood of repeating the act. The citizen witness could not identify M.Y. as the man from the Home Depot and no other evidence supports the felony charge. Without a felony charge, no basis exists for commitment on that ground in the petition.

Concerning the second ground, whether M.Y. was gravely disabled, Dr. Kieu testified that she was familiar with M.Y. and had evaluated him for potential commitment. She had made multiple attempts to speak with M.Y., but as he was often agitated and guarded, he only spoke with her once. Dr. Kieu's evaluation primarily involved reviewing records and consulting with M.Y.'s regular treatment team. That information allowed her to diagnose M.Y. with "unspecified schizophrenia spectrum and other psychotic disorder." Dr. Kieu's evaluation detailed that M.Y. was argumentative, confrontational, and paranoid. He often circled back to beliefs that he was being held illegally, was being persecuted by the hospital, and kept for monetary gain. He did not believe he had any mental illness and was consistently non-compliant with medication. While in the hospital, M.Y. informed his providers that, if discharged, he would not take any of

3

the medication prescribed. Dr. Kieu indicated that taken together, this behavior showed that M.Y. did not have the tools to maintain himself safely in the community and should not be discharged.

M.Y.'s mother testified that she and her husband would help M.Y. settle once released. She also testified to M.Y.'s history of mental illness. Although she sought M.Y.'s discharge, M.Y.'s mother noted that he had a history of delusions and being verbally combative. She detailed his consistent refusal of any medication at all.

M.Y. also testified on his own behalf. He pointed to a shelter in Bellevue he had used in the past as a temporary housing option. He stated that he would accept his parents' help in getting treatment. And he identified mental health services that he trusted and was willing to attend. In contrast to his earlier statements, M.Y. asserted that he would continue treatment outside of the hospital, to "clear [his] name."

The commissioner found that M.Y. met the definition of gravely disabled by clear, cogent, and convincing evidence and granted the petition for involuntary treatment. M.Y. appeals.

## ANALYSIS

M.Y. contends that substantial evidence does not support the trial court's finding that he is gravely disabled. We agree.

Where the trial court has weighed evidence, our review is "limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and

judgment." In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the asserted premise. State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We will not disturb a trial court's finding of grave disability if that finding is supported by substantial evidence the lower court could have reasonably found to be clear, cogent, and convincing. LaBelle, 107 Wn.2d at 209.

"[I]nvoluntary commitment for mental disorders is a significant deprivation of liberty which the State cannot accomplish without due process of law." LaBelle, 107 Wn.2d at 142. In general, an individual may only be involuntarily committed as the result of a mental disorder if the individual either (1) poses a substantial risk of harm to themselves, others, or the property of others, or is gravely disabled. LaBelle 107 Wn.2d at 202.

RCW 71.05.020(25) defines "gravely disabled" as

a condition in which a person, as the result of a behavioral health disorder: (a) [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Under the first definition, the petitioner must offer "recent, tangible evidence" that the individual's failure or inability to provide for needs like food, clothing, shelter, or medical treatment presents a high likelihood of serious physical harm in the near future. LaBelle, 107 Wn.2d at 204-205. This failure or

inability to provide must stem directly from the mental disorder. LaBelle, 107 Wn.2d at 204-205.

Under the second definition, the petitioner must provide a factual basis for the conclusions that the individual " 'manifests severe deterioration in routine functioning.' " LaBelle, 107 Wn.2d at 208 (quoting RCW 71.05.025(b)). This evidence must include recent proof of significant loss of cognitive or volitional control. RCW 71.05.020(25). "It is not enough to show that care and treatment of an individual's mental illness would be preferred or beneficial or even in [their] best interests. To justify commitment, such care must be shown to be *essential* to an individual's health or safety." LaBelle, 107 Wn.2d at 208. The fact that an individual is mentally ill is not enough to demonstrate that the person is incapable of making a rational choice as to their treatment. LaBelle, 107 Wn. App. at 208.

Here, the court ordered M.Y.'s involuntary commitment based solely on M.Y.'s "grave disability," as defined by RCW 71.05.020(25)(b). But the court's findings are insufficient to establish that M.Y. is gravely disabled under either definition.

The State offered no evidence that M.Y.'s mental or physical state while at Western State was a severe deterioration from a higher level of function. M.Y.'s mother testified to his long history of behavioral and mental health issues. She described instances of delusion and paranoia, a history of combative behavior and a consistent refusal of any medication. This indicates that M.Y.'s level of functioning while at Western State tracked closely with his level of function

6

across the decades before his commitment. A history of similar issues does not establish a "severe deterioration."

The State also failed to present evidence that M.Y. had a repeated and escalating loss of cognitive or volitional control. This was M.Y.'s first admission to Western State, undermining the idea that this is part of a repeated pattern of loss of control. And the State provided no evidence of escalating behavior. Rather, M.Y.'s behavior on admission to the hospital was similar to that before his admission, and then began to improve.

Despite the improvement, the State did not offer evidence that the care M.Y. received at Western State was essential to his health or safety. Although M.Y. appeared disheveled at the time of his arrest and sometimes while in the hospital, Dr. Kieu testified that he was eating, showering, and maintaining basic hygiene. The State provided no evidence that M.Y. was malnourished, dehydrated, or otherwise injured while he was arrested or any time at Western State. This indicates that M.Y. was capable of meeting his basic needs while in the community and that his time in the hospital was not essential to his ability to do so.

Looking to the future, M.Y.'s mother indicated that she was willing to clothe him, house him for a few days, and help him get treatment in the community. She had already located resources on bus lines so that M.Y. could easily reach them. In addition, M.Y. testified about a shelter he knew he could use, mental health services he trusts, and his willingness to follow any court

7

instructions. All of this suggests that M.Y. would continue to be capable of caring for his essential needs once released.

Again, the fact that an individual has a mental illness is not enough to prove they are incapable of caring for themselves. LaBelle, 107 Wn. App. at 208. No evidence exists of any severe deterioration in M.Y.'s routine functioning or any inability to care for his essential needs. Accordingly, the evidence is insufficient to find that, as a result of a behavioral health disorder, M.Y. manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, and he is not receiving such care as is essential for health and safety.

We hold that the trial court's findings do not support its conclusion that M.Y. is gravely disabled. We therefore vacate the court's 90-day involuntary commitment order.

Smith, C.J.

WE CONCUR:

Díaz, J.

Dwyer, J.